

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00009-CV

_____

WALKER & ASSOCIATES SURVEYING, INC., AND DENNIS
WALKER,   D/B/A WALKER AND ASSOCIATES CONSTRUCTION,
Appellants

V.

ROYCE ROBERTS, Appellee

On Appeal from the 114th Judicial District Court
Smith County, Texas
Trial Court No. 07-2442-B

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

O P I N I O N

Royce Roberts hired Walker & Associates Surveying, Inc. (WAS) and Dennis Walker (Walker) d/b/a Walker and Associates Construction (WAC) (collectively the Walker Group) to extend a horse training racetrack on his property. A dispute arose as to how to build the racetrack, workers were instructed to leave the job, and WAS filed a mechanic's lien affidavit on Roberts' property. WAS filed suit on sworn account and later WAC joined the suit and sought quantum meruit for the value of services performed. Roberts counterclaimed and was awarded partial summary judgment in his favor against WAS for a fraudulent lien and usurious interest charged by WAS. The remaining claims by the Walker Group were tried to a jury who found that WAC breached the agreement and did not substantially perform under the contract, but found Roberts suffered no damage as a result of the breach. The jury assessed a monetary value for the services performed by WAC, and the trial court awarded a recovery based on quantum meruit grounds. While WAS actually did some survey work before the contract was entered with WAC, the bulk of the work to the track was by WAC. The fact that Walker did not initially accurately designate the entity making the claim has raised many of the legal issues.[1]

All parties presented points of error to this Court. The Walker Group appeals the trial court's partial summary judgment. As to the portion of the judgment against WAS, it is alleged:

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

Specifically, (1) the elements of usury were not proved as a matter of law; (2) the rate of interest charged was not illegal; (3) late fees were not "interest" under the usury statutes; (4) any usury violation was cured; (5) the trial court erred in awarding additional sums for the usury violation because more than twice the legal rate of interest was not received by WAS; and (6) Walker and WAS did not knowingly file a fraudulent lien. They also challenge the jury's findings for legal and factual sufficiency and claim the trial court erred when it admitted written statements made by WAC employees over hearsay objections, failed to include a requested instruction, and refused to award eighteen percent interest on the quantum meruit award. Roberts appeals the trial court award of quantum meruit to WAC, arguing that such an award should not be recoverable where the jury found WAC breached its contract and did not substantially perform.

We find that Roberts failed to prove as a matter of law that WAS intended to cause financial harm when it filed the fraudulent lien. Because WAS received no interest, as required under Section 305.004 of the Texas Finance Code, we find the trial court erred in awarding summary judgment and additional sums for the usury violation based on that statute. Although we conclude the trial court properly determined the interest charged by WAS was usurious under Section 305.003 of the Texas Finance Code, we note that the amount of damage awarded presented an issue of fact. Thus, we affirm the summary judgment in part and reverse and remand in part for trial on the merits.

3

However, we affirm the trial court's remaining portions of the judgment because we find that legally and factually sufficient evidence supported the jury's findings, the Thacker statements were nonhearsay, the instruction the Walker Group sought to include was improper, quantum meruit was properly awarded, and the argument that eighteen percent interest should have been awarded on the quantum meruit recovery was not preserved.

## I.      Factual and Procedural History

### A.      The Three-Foot Clay Base Requirement

Roberts wanted to extend his half-mile horse training racetrack to seven-eighths of a mile. Roberts and farm manager/trainer Tony Richey met with Walker to discuss how the track was to be rotated and extended.  Roberts wanted to expand a pond area and use the clay from the pond to build the track.  According to Roberts, they discussed with Walker that it was important for the track to have three feet of clay in order to support the 44,000-pound water truck and other equipment used to maintain the track.  Without a three-foot base, "the equipment wouldn't hold up.  The horses would dig into it and it will be a catastrophe."  Richey also stated "there was supposed to be a three-foot minimum.  And that's base—that's what was discussed on the base" with Walker.  Walker made sure Roberts "understood we were going to need . . . several thousand yards of dirt."  A field survey was conducted,[2] the property was staked, and a test dig determined there was clay on-site that was sufficient to use.  A second meeting evaluating the track's

---

[2]The survey was done by WAS.   There was no separate contract with WAS for the field survey.

positioning resulted in a contract providing that Roberts would pay the lump sum price of $57,250.00

> to construct a 7/8 mile Horse Track . . . as per [Roberts'] instructions along with [Walker's] site visit on Saturday August 28, 2004 and on Saturday October 2, 2004. Included in this cost will be all surveying for construction, rotovating, bladeing, excavating and compaction of material to be used from the pond area (around trees) in order to have the clay and sod to construct the race track. . . . Lake around trees will need to be a minimum of 140ft wide x 8ft deep with a 4 to 1 slope on the sides in order to have enough material to construct the track.

WAC's crews started working two weeks after the contract was signed on October 4, 2004. The crew first pulled off the sod, used a rotovator to till the clay, compacted it, and made a road base. WAC sent the first bill of $5,735.00, ten percent of the lump sum, on October 25, 2004, and was paid in full. However, because vegetation was tilled into the soil, preventing proper compaction, the soil had to be removed from the track. This caused the track to fall "below grade," meaning that the lower elevation of the track caused the south end of the track to retain water and it became dangerous for the horses to train on.

B.    Walker Decides to Forego the Three-Foot Clay Base and Pulls the Crew from the Job

Walker, who never built a racetrack, and had never used a three-foot clay base, asked WAC's supervisor and foreman, David Thacker, to confirm the three-foot requirement with Richey. Thacker conveyed to Walker over the telephone that Richey said, "If you don't put three foot of clay, you're not going to get paid." Walker told Thacker to "[l]oad everything and get out. We're not - - I'm not spending no more on something that somebody is making a decision like

5

this." Walker justified his actions by telling the jury, "[W]e don't put three foot of clay on anything," "that's just absurd to have three foot of clay on a project with a 1,200 pound horse," and "if you're going to put three foot of clay on this, it takes an area the width of a football field and three-and-a-half football fields and eight-foot deep." Walker also told the jury he was instructed by Roberts and Richey "to put some one foot of clay, max, because if you get it too hard - - whatever it does."

Roberts testified WAC did not finish even forty percent of the work contracted for, and, because it had to be redone, WAC's work was of no use. To finish the job, Roberts had to purchase a scraper, rent a blade, compactor, and dozer, and had to hire another contractor.[3]

C.     Walker's Employees Convey Their Understanding of the Three-Foot Requirement

Walker hung up the telephone with Thacker. Thacker, and his son Allen, who was the equipment operator, both immediately conveyed to Richey "[w]e understood we were supposed to put three foot." Richey asked the Thackers to put their understanding in writing. They agreed, and each signed a document stating they were

> told on different occasions to put three feet of clay base on the racetrack located at 12751 Highway 110 North, Tyler, Texas, by Dennis Walker. This is what was agreed to by Dennis Walker and Royce Roberts. On 11-4-04, was told to pick up equipment and leave by Dennis Walker, that he was not putting over one foot of clay on track.

D.     Actions Taken After the Crew Abandons the Job

---

[3]Roberts decided to widen the track from thirty feet to forty feet. Although he recognized that part of the work was due to widening of the track not contemplated under WAC's contract and inclusion of a rail and chute, Roberts testified the total price for the other contractor to complete the track was $85,345.70.

Because Walker believed fifty percent of the work was done in the nine and a half days after the first invoice was sent, WAC sent a November 4, 2004, invoice for $22,940.00. The same day, *WAS* filed a mechanic's lien in volume 7650, page 474 of the county clerk's official public records. The affidavit for mechanic's lien, which Walker signed under penalty of perjury, stated *WAS* "performed labor and furnished material to improve [Roberts'] real property" and that "the amount of $29,133.10 . . . remain[ed] unpaid and [was] due and owing to claimant, Walker & Associates Surveying, Inc." Walker admitted his affidavit was incorrect because WAC, not WAS, was the correct claimant.[4]

After nonpayment by Roberts, WAS filed a suit on sworn account stating it sold Roberts a service and that he "accepted each item and became bound to pay Plaintiff its designated price." The affidavit in support of the suit on sworn account, signed by Walker, listed the principal balance on the account as $25,148.73, contrary to both the final invoice and affidavit in support of the mechanic's lien. Although the contract between Roberts and WAC was not signed until October 4, 2004, and work by WAC on the project did not begin until two weeks after, the affidavit stated the date the debt became payable was May 3, 2004.[5] Produced records show that WAS was charging Roberts $35.00 per month as a late fee, and Walker stated in his deposition that 1.5

---

[4]Walker testified the affidavit "should say Walker & Associates Construction."

[5]WAS had done survey work before this time.

7

percent interest per month (eighteen percent interest per annum) was being charged even though the contract did not discuss such fees and interest.

In the meantime, Roberts filed counterclaims alleging WAS filed a fraudulent lien because Roberts had no contract with WAS, the lien had expired, and the late fees and interest were usurious under Sections 305.003 and 305.004 of the Texas Finance Code. A motion for partial summary judgment on the counterclaims was filed.[6] Roberts attached Walker's deposition wherein he admitted the affidavit in support of lien and affidavit in support of the sworn account were incorrect because they had the wrong claimant, wrong amount due, that there was no authority to charge a finance charge, and the late fee was not authorized by contract. Roberts also attached invoice summaries up to May 26, 2006, showing that the principal amount due to WAS was $1,979.76. He alleged that the interest and late fees charged up to that date was $1,750.00. Walker's summary judgment evidence in response stated that even though the original petition and lien claim were styled on behalf of Walker Surveying, Inc., only, he intended to include the debt owed to WAC. The trial court granted the partial summary judgment against WAS, awarded Roberts $8,385.60 for the usury violation, $10,000.00 on the fraudulent lien claim, declared the

---

[6]The record contains a summary judgment granted in WAS's favor on its suit on sworn account. This summary judgment has no bearing on this Court's opinion. The trial court set the motion for hearing on January 23, 2008, but WAS asked to cancel the hearing. Nevertheless, the trial court granted WAS's motion for summary judgment. The summary judgment order stated that WAS had appeared through its attorney of record, while Roberts did not appear. When the miscommunication regarding the hearing date was pointed out to the trial court, the summary judgment was set aside.

lien null and void, and set it aside. The amount of attorney's fees was left for determination at trial.

When clarifying its ruling, the trial court stated:

In granting Defendant's motion, the Court held that Plaintiff (1) violated Tex. Fin. Code § 305.003 by charging interest greater than the legal rate of 6% per annum, and (2) violated § 305.004 by charging more than twice the legal rate of interest. As a result, the Court awarded $8,385.60 as the damages provided by §305.003 and §305.004. Included in this amount was an award of $1,979.76 for "the principal amount on which the interest is charged and received" as provided by Tex. Fin. Code §305.004. Therefore, the Court's Partial Summary Judgment adjudicated Plaintiff's claim for $1,979.76 against Plaintiff and in favor of Defendant. Because this claim for $1,979.76 is the only claim of Plaintiff Walker Surveying & Associates, Inc., against Defendant (other than claims for attorney's fees and interest based upon such claim), Plaintiff Walker Surveying & Associates, Inc., is not entitled to any recovery against Defendant.

After the motion for summary judgment was filed, WAS amended its petition to include WAC as a party plaintiff, and also added a quantum meruit cause of action. After trial on these claims only, the jury found that WAC failed to comply with the agreement, that the contract was not substantially performed, and that their noncompliance was not excused. But the jury also found that Roberts did not sustain any damages as a result of the breach. Even though the jury awarded substantial attorney's fees due to the breach, these attorney's fees were not granted by the trial court since Roberts did not prevail on the underlying damage issue. The jury also found that the reasonable value of work performed by WAC was $13,200.00. The final judgment incorporated the trial court's partial summary judgment, set prejudgment and post-judgment interest on Roberts' usury and fraudulent lien claims at five percent, awarded $655.75 in attorney's

9

fees for each claim, and awarded $1,500.00 on each claim as attorney's fees if successfully defended on appeal.[7] The trial court also awarded WAC $13,200.00 on its quantum meruit claim and set prejudgment interest at five percent.

## II. Summary Judgment on Fraudulent Lien and Usurious Interest Under Section 305.004 of the Texas Finance Code Was Improper

### A. Standard of Review

We will review de novo the trial court's partial summary judgment. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Lamar Corp. v. City of Longview*, 270 S.W.3d 609, 613 (Tex. App.—Texarkana 2008, no pet.). Summary judgment is proper if Roberts established that there was no genuine issue of material fact and that he was entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *French v. Gill*, 252 S.W.3d 748, 751 (Tex. App.—Texarkana 2008, pet. denied); *Powers v. Adams*, 2 S.W.3d 496, 497 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985)). In deciding whether there was a disputed material fact issue which precluded partial summary judgment, proof favorable to the Walker Group will be taken as true. *Nixon*, 690

---

[7]The trial court's attorney's fees award was based on Roberts' attorney's testimony stating he had segregated the fees for the usury and fraudulent liens claims to be only $1,312.50.

10

S.W.2d at 548–49. We will indulge every reasonable inference in their favor. *Limestone Prods.*

*Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002).

> B.       Fact Issues Regarding Intent to Financially Harm Roberts Precluded Summary
> Judgment on Fraudulent Lien

The party asserting that a claimed lien is a fraudulent lien has the burden to prove the

requisite elements in the statute. *Aland v. Martin*, 271 S.W.3d 424, 430 (Tex. App.—Dallas

2008, no pet.). The fraudulent lien statute states:

> (a) A person may not make, present, or use a document or other record with:
>
> > (1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;
> >
> > (2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and
> >
> > (3) intent to cause another person to suffer:
> >
> > > (A) physical injury;
> > >
> > > (B) financial injury; or
> > >
> > > (C) mental anguish or emotional distress.

Tex. Civ. Prac. & Rem. Code Ann. § 12.002 (Vernon Supp. 2009).

11

Thus, to establish a fraudulent lien in this case, Roberts was required to show that Walker or WAS (1) made, presented, or used a document with knowledge that it was a fraudulent lien; (2) intended the document be given legal effect; and (3) intended to cause Roberts financial injury. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 12.002(a).[8]

It should be noted that WAS did some survey work, of approximately $2,000.00 value, without any written contract. WAC entered into a contract with Roberts for the construction portion of the project and alleges it was owed approximately $25,000.00.

We begin this discussion by focusing on the third element: whether there was summary judgment evidence demonstrating Walker intended for Roberts to suffer financial harm. *See Taylor Elec. Servs. v. Armstrong Elec. Supply Co.*, 167 S.W.3d 522, 531–32. The need for a finding on intent was demonstrated in *Aland*, where a trial court awarded judgment based on a fraudulent lien after a bench trial. *Aland*, 271 S.W.3d at 424, 426. The trial court found the elements of a fraudulent lien were met because: (1) a deed of trust was taken out on community property in fraud without consent of Aland's spouse; (2) the action created a lien on the community property; and (3) Aland was a family lawyer who should have known better than to take out a lien in fraud. *Id.* at 428 n.2. In reversing the trial court's judgment, the court of appeals reasoned that these findings only went to the first element under the statute—knowledge that the lien was fraudulent. *Id.* at 430. The trial court's finding that the lien was created with

---

[8]A person who violates this section is liable to the obligor in an amount which is the greater of $10,000.00 or the actual damages caused by the violation, along with court costs, reasonable attorney's fees, and exemplary damages in an amount determined by the court. TEX. CIV. PRAC. & REM. CODE ANN. § 12.002(b).

intent to cloud title on the property went to the second element—intent that the fraudulent lien have effect. *Id*. After noting that there was no request for finding on intent to cause harm and that the record did not support such a finding if requested, the court concluded the evidence was legally insufficient to support such a finding. *Id*. at 426, 431. The court of appeals also rejected the argument that intent to harm be "inferred" from "common knowledge." *Id.* at 431; *see also Preston Gate v. Bukaty*, 248 S.W.3d 892, 897 (Tex. App.—Dallas 2008, no pet.) (reversing summary judgment and rejecting notion that intent to cause financial injury was "self-evident").

As in *Aland*, Roberts' arguments with respect to intent to cause financial harm pertain to the first two elements of a fraudulent lien. He points to the uncontested evidence that there was no contract with WAS and that he did not owe the amount listed in the lien.[9] *See* TEX. PROP. CODE ANN. § 53.021(a)(2) (Vernon 2007) (only persons with contract entitled to file lien); *Taylor Elec. Serv., Inc.*, 167 S.W.3d at 531–32 (Tex. App.—Fort Worth 2005, no pet.) (incorrect amount on lien) (same); *Centurion Planning Corp. v. Seabrook Venture II*, 176 S.W.3d 498, 505 (Tex. App.—Houston [1st Dist.] 2004, no pet.). He identifies that the affidavit supporting the lien stating a balance of "$29,133.10 . . . remain[ed] unpaid" was signed on November 4, 2004, that the invoice was printed on that date, and that the Thackers were told to abandon the property on that date. In other words, there was no evidence that Roberts had even received an invoice before the lien was filed. Roberts also points to Walker's deposition revealing his knowledge that the lien

---

[9]Walker testified it was his normal practice to immediately file a lien and that his office prepared the lien. This evidence suggests Walker may not have had intent to cause Roberts financial harm.

13

was incorrect and should have stated that the claim was made by Walker Associates Construction, Inc. By filing the lien, and placing a cloud on Roberts' title, there is evidence that WAS, acting through Dennis Walker, intended the lien to be given legal effect. The evidence from Walker was that he knew, at the time the deposition was taken, that the lien affidavit was incorrect.

This evidence does not establish as a matter of law that he originally presented the lien affidavit for filing with knowledge that it was fraudulent. WAC and WAS both had done some work on the property; WAC had a written contract which would authorize it to file a lien, whereas WAS did not. This statute does not define the term "fraudulent," but generally it is a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment. *See* BLACK'S LAW DICTIONARY 730 (9th ed. 2009). We see a distinction in an affidavit that is factually inaccurate in some respect and one that is attempting to perpetrate a fraud. While this lien may be invalid and unenforceable as filed, we believe there is a fact issue on whether it is fraudulent.

Next, Roberts cites *Taylor Electrical Services* for the proposition that Walker's letter informing Roberts of the lien stating, "Upon receipt of payment in full this lien will be removed" was evidence of intent to cause financial harm. 167 S.W.3d 522. There are two key differences distinguishing this case from *Taylor*. First, *Taylor* involved a jury finding. *Id.* at 525. Second, the evidence of intent in *Taylor* was a letter threatening to file a lien and stating, "We do not wish you any harm in your business," evidencing knowledge that the filing of a lien could potentially

14

cause financial harm. *Id.* at 531. We decline to find that the letter sent by Walker in this case established intent as required by the fraudulent lien statute. At most, it creates a genuine issue of material fact for a jury's resolution.

Section 51.901(c) of the Texas Government Code provides that "[f]or purposes of this section" a document or instrument "is presumed to be fraudulent" if:

> [T]he document or instrument purports to create a lien or assert a claim against real or personal property or an interest in real or personal property and:
>
> . . . .
>
> (B) is not created by implied or express consent or agreement of the obligor, debtor, or the owner of the real or personal property or an interest in the real or personal property, if required under the laws of this state, or by implied or express consent or agreement of an agent, fiduciary, or other representative of that person.

TEX. GOV'T CODE ANN. § 51.901(c)(2)(B) (Vernon Supp. 2009).

As a final attempt at meeting the statutory requirements of Section 12.002, Roberts suggests that this Court should apply the Government Code presumptions. Roberts' argument is based on a reference to this Government Code section in Section 12.006 of the Texas Civil Practice and Remedies Code, which discusses awarding plaintiffs costs of suit. Our sister court has rejected Roberts' suggested application. *Centurion Planning Corp.*, 176 S.W.3d at 507. The court in *Centurion* reasoned that the Legislature did not define fraudulent lien in the Texas Civil Practice and Remedies Code, and could have easily referred to Section 51.091. *Id.* In its reasoning, the court pointed out that the Texas Government Code did not define fraudulent lien,

15

but rather established presumptions which would apply under certain circumstances. *Id.* As our sister court did in *Centurion*, we decline to extend application of the Government Code presumptions to Section 12.002. Moreover, a plain reading of Section 12.002 suggests that even should this Court apply the Government Code presumption, it would only aid Roberts with respect to the first element of the fraudulent lien statute. In other words, evidence of intent as a matter of law would still be required.

Because there was a fact question on the issue of Walker's knowledge that the document was a fraudulent lien and the intent to cause financial harm, we reverse the trial court's fraudulent lien summary judgment against WAS and remand for trial on the merits.

C. Usurious Interest Award Under Section 305.004 Was Error

Section 305.004 provides for additional monetary damage if a creditor charges *and receives* more than twice the legal rate of interest. TEX. FIN. CODE ANN. § 305.004 (Vernon 2006). *Compare with* § 305.003 (states creditor liable if he or she "charges or receives" usurious interest). Because there is no summary judgment evidence demonstrating WAS received any interest payments, we hold that granting summary judgment for usurious interest under Section 305.004 of the Texas Finance Code was error. *See* C&K *Invs. v. Fiesta Group, Inc.*, 248 S.W.3d 234, 250–51 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Aguilar v. Anderson*, 855 S.W.2d 799, 803 (Tex. App.—El Paso 1993, writ denied) (citing *Cook v. Frazier*, 765 S.W.2d 546, 553 (Tex. App.—Fort Worth 1989, no writ)).

16

The trial court's summary judgment based on Section 305.004 and the applicable attorney's fee award are reversed and remanded for trial on the merits.[10]

D.      While Roberts Established Elements of Usury Under Section 305.003, Damage Fact Questions Remained

WAS claims the essential elements of usury were not shown.   The essential elements of a usurious transaction are:   "(1) a loan of money, (2) an absolute obligation to repay the principal, and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower."   *First Bank v. Tony's Tortilla Factory, Inc*., 877 S.W.2d 285, 287 (Tex. 1994).   The Texas Finance Code defines the term "loan" as "an advance of money that is made to or on behalf of an obligor, the principal amount of which the obligor has an obligation to pay the creditor," and an "obligor" is "a person to whom money is loaned or credit is otherwise extended."   TEX. FIN. CODE ANN. § 301.002(a)(10), (13) (Vernon 2006).   A "creditor" is "a person who loans money or otherwise extends credit."   *See* TEX. FIN. CODE ANN. § 301.002(a)(3) (Vernon 2006).

1.      A loan of money

WAS argues that Roberts did not establish a loan of money as a matter of law.   This argument was addressed and rejected in *271 Truck Repair & Parts, Inc. v. First Air Express, Inc.*, which "conclude[d] that the . . . plain meaning of "creditor" includes suppliers of goods or services when they charge interest on past due amounts."   No. 03-07-00498-CV, 2008 WL 2387630, at *9 (Tex. App.—Austin June 11, 2008, no pet.) (mem. op.).   In its reasoning, *271 Truck Repair* cited

---

[10]For this issue to reach a jury, Roberts must present some evidence WAS received a usurious interest payment.

17

several Texas cases holding that suppliers of goods or services charged usurious interest rates. *Id.* (citing *Strasburger Enters., Inc. v. TDGT Ltd. P'ship*, 110 S.W.3d 566, 574 (Tex. App.—Austin 2003, no pet.); *William C. Dear & Assocs., Inc. v. Plastronics, Inc.*, 913 S.W.2d 251, 253–54 (Tex. App.—Amarillo 1996, writ denied) (usury violation based on interest charged in invoice for investigatory services); *Douglas Electronics, Inc. v. Pinnacle Sys., Inc.*, 805 S.W.2d 852, 856–57 (Tex. App.—Corpus Christi 1991, no writ); *Commerce, Crowdus & Canton, Ltd. v. DKS Constr., Inc.*, 776 S.W.2d 615, 616–18 (Tex. App.—Dallas 1989, no writ) (applied usury statutes to extension of credit under construction contracts)). Similarly, we find WAS to be a creditor because services were supplied and interest was charged on past due amounts. *See Broady v. Johnson*, 763 S.W.2d 832, 834 (Tex. App.—Texarkana 1988, no pet.) (landowner charged usurious interest on contract for service allowing cattle to be pastured on his land).

2. An absolute obligation to repay the principal

WAS filed a suit on sworn account stating Roberts was "bound to pay Plaintiff its designated price." Walker signed an affidavit in which he stated that "$25,148.73 [was] due and payable," implying an obligation to repay the principal balance. Nevertheless, WAS next asserts that even if it can be considered a creditor, there was no absolute obligation that the principal be repaid.

In rejecting this argument, we note that courts have found usury statutes applicable to open accounts because they extend credit from the date of purchase to the date of payment, which is

expected to be repaid. *Domizio v. Progressive County Mut. Ins. Co.*, 54 S.W.3d 867, 874 (Tex. App.—Austin 2001, pet. denied) ("The normal loan transaction involves credit, and in an open account transaction, credit is extended from the date of purchase to the date of payment. A violation of the usury statute in those cases results from a credit transaction."); *Commerce, Crowdus & Canton*, 776 S.W.2d at 616–18; *Potomac Leasing Co. v. Housing Auth. of City of El Paso*, 743 S.W.2d 712, 713 (Tex. App.—El Paso 1988, writ denied) ("Under the open account transaction, credit is extended from the date of purchase to the date of payment."). This theory is consistent with holdings in cases where invoices for services rendered in connection with a contract supported the trial court judgments finding usury violations. *William C. Dear & Assocs.*, 913 S.W.2d at 253–54; *Douglas Electronics, Inc.*, 805 S.W.2d at 856‒57; *Commerce, Crowdus & Canton*, 776 S.W.2d at 616–18; *Broady*, 763 S.W.2d at 834.

Thus, we conclude WAS "otherwise extended credit" to Roberts amounting to an absolute obligation by Roberts to repay the principal. TEX. FIN. CODE ANN. § 301.002(a)(3). This element has been met.

19

3.      Exaction of greater compensation than allowed by law

Next, we address whether Roberts was charged interest in an amount greater than allowed by law.   Section 302.002 of the Texas Finance Code states, "[i]f a creditor has not agreed with an obligor to charge the obligor any interest, the creditor may charge and receive from the obligor legal interest at the rate of six percent a year."   TEX. FIN. CODE ANN. § 302.002 (Vernon 2006). Here, as per Walker's admission, since there was no contract with WAS establishing the interest rate, "the statutory rate of six percent [was] read into the agreement and bec[ame] the maximum rate allowed on the transaction."   *All Seasons Window & Door Mfg. v. Red Dot Corp.*, 181 S.W.3d 490, 497 (Tex. App.—Texarkana 2005, no pet.); *Broady*, 763 S.W.2d at 834.

Walker cites this Court to the Prompt Payment Act in Sections 28.002 and 28.004 of the Texas Property Code to support his argument that the Act legally allowed 1.5 percent to be charged each month.   *See* TEX. PROP. CODE ANN. §§ 28.002, 28.004 (Vernon 2000).   That statute allows a contractor to require payment for an amount "that is allowed to the contractor under the contract for properly performed work . . . ."   An unpaid invoice bears interest at 1-1/2 percent a month.   *Id*.   Here, WAS billed Roberts for $22,940.00, an amount not due and owing to it. Thereafter, WAS added late charges and interest of 1-1/2 percent monthly.   Accordingly, the Prompt Payment Act is inapplicable to WAS in this instance.

"A creditor who charges or receives legal interest" greater than six percent per annum "is liable to the obligor."   TEX. FIN. CODE ANN. § 305.003 (Vernon 2006).   It is undisputed that

20

WAS charged more than the six percent maximum rate allowed. Thus, Roberts met its burden to prove interest charged by WAS was usurious under Section 305.003.

### E. WAS Did Not Cure This Usurious Interest Violation

The applicable statute regarding cure states:

> With respect to a defendant filing a counterclaim action alleging usurious interest in an original action by the creditor, the defendant shall provide notice[11] complying with Subsection (b) at the time of filing the counterclaim and, on application of the creditor to the court, the action is subject to abatement for a period of 60 days from the date of the court order. During the abatement period the creditor may correct a violation. *As part of the correction of the violation, the creditor shall offer to pay the obligor's reasonable attorney's fees as determined by the court* based on the hours reasonably expended by the obligor's counsel with regard to the alleged violation before the abatement. A creditor who corrects a violation as provided by this subsection is not liable to an obligor for the violation.[12]

TEX. FIN. CODE ANN. § 305.006(d) (Vernon 2006) (emphasis added).

WAS argues that the usurious interest charges were cured because it only prayed for the principal balance in its pleadings, and it produced a document evidencing some sort of credit to Roberts for the purported usurious interest after Roberts' partial motion for summary judgment was filed. It relies on a single case from the Fifth Circuit to support this position, *In re CPDC, Inc.*, 337 F.3d 436 (5th Cir. 2003). In *CPDC*, the court decided that a pre-suit notice sent by the creditor, which informed the debtor that the interest it charged was usurious and renegotiated the

---

[11]The Walker Group complains that the notice sent by Roberts of the usury violation was untimely. We need not address this issue since the Walker Group failed to request an abatement.

[12]As a matter of first impression, our sister court has held that this remedial statute applies retroactively. *Bair Chase Prop. Co. v. S & K Dev. Co.*, 260 S.W.3d 133, 144 (Tex. App.—Austin 2008, pet. denied).

21

interest, renounced any right to receive usurious interest and was thus sufficient to cure the violation. *Id.* at 439, 446. Importantly, the court's opinion was based on Section 305.103 of the Texas Finance Code, which states:

> (a) A creditor is not liable to an obligor for a violation of this subtitle if:
>
> (1) not later than the 60th day after the date the creditor actually discovered the violation, the creditor corrects the violation as to that obligor by taking any necessary action and making any necessary adjustment, including the payment of interest on a refund, if any, at the applicable rate provided for in the contract of the parties; and
>
> (2) *the creditor gives written notice to the obligor of the violation before the obligor gives written notice of the violation* or files an action alleging the violation.

TEX. FIN. CODE ANN. § 305.103 (Vernon 2006) (emphasis added).

This statute, addressing pre-suit cure, does not apply to this case because WAS did not give Roberts notice of the usury violation first, and the attempted cure came only after the filing of suit. By failing to offer to pay Roberts' attorney's fees, WAS failed to comply with post-suit cure statute Section 305.006(d). *Bair Chase Prop. Co*., 260 S.W.3d at 143 n.6 (distinguishing *Pagel v. Whatley*, 82 S.W.3d 571 (Tex. App.—Corpus Christi 2002, pet. denied), held creditor cured usury violation by deleting charges of interest and making demand for principal only because it was based on Section 305.103);[13] *Strasburger Enters., Inc.,* 110 S.W.3d at 577 (holding under Section 305.103 that "a pleading alone is insufficient to serve as a notice to correct a usurious violation

---

[13]The trial court in *Bair Chase Property Company* issued an order abating the case for sixty days and required the creditor to pay the debtor $6,000.00 in attorney's fees. 260 S.W.3d at 137. Because the creditor paid the attorney's fees and sent a corrective action letter to the debtor, the court determined the violation of the usury statute was cured. *Id.*

when not delivered to the obligor before the obligor communicates notice of a violation to the creditor").

F.      There Are Fact Questions Regarding the Trial Court's Usurious Interest Award

The trial court awarded a total of $8,385.60 for alleged violations of Sections 305.003 and 305.004, but erred in granting summary judgment under Section 305.004. Therefore, in accordance with Section 305.003, WAS was liable to Roberts only for an amount "equal to the greater of: (1) three times the amount computed by subtracting the amount of legal interest allowed by law from the total amount of interest charged or received; or (2) $2,000.00 or twenty percent of the amount of the principal, whichever is less." TEX. FIN. CODE ANN. § 305.003.

The legal interest is simple to calculate. The trial court determined, with support from WAS invoices presented during summary judgment, that "the principal amount on which the interest [was] charged and received" was $1,979.76. Twenty percent of this principal amount is $395.95. However, interest charged presents an issue of fact.

It appears that the trial court relied on a summary prepared by Roberts as to the amount of interest charged indicating the total finance and interest charges was $1,750.95. The summary adds late fees assessed at $35.00 per month. WAS contends it was error for the trial court to include late fees into the damage calculation. We disagree.[14] Several Texas courts have held that late fees without contractual right to charge them are considered usurious interest. *Seiter v.*

---

[14]The Walker Group also questions "[w]hether the charge was due to a mistake or accident is a . . . genuine issue of material fact." No evidence raising the issue of mistake or accident is provided in the record, and we need not address this contention.

*Veytia*, 756 S.W.2d 303, 305 (Tex. 1988) (citing *Dixon v. Brooks*, 604 S.W.2d 330, 333 (Tex. Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.) (reasoning late charge is "compensation for the . . . detention of money" under Section 301.002(4) and is therefore interest); *Windhorst v. Adcock Pipe & Supply*, 547 S.W.2d 260, 260–61 (Tex. 1977) (holding finance charge on open account was interest); *Watson v. Cargill, Inc., Nutrena Div.*, 573 S.W.2d 35, 42 (Tex. Civ. App.—Waco 1978, writ ref'd n.r.e.)).[15]  Thus, the trial court was authorized to include the late fees into the damage calculation.

However, Roberts' summary showing that the total amount charged for interest and late fees was $1,750.95 presents a fact question.  The invoices sent by WAS to Roberts are in the record.  Beginning on July 30, 2004, late fees (finance charge) and interest were charged to Roberts beginning on a monthly basis.  From July until December 2004, WAS sent a monthly statement to Roberts for a $35.00 late charge and an additional amount for interest.  In 2005, it appears no statement was sent until December 30, 2005, at which time a statement for $630.00 was

---

[15]The Walker Group cites this Court to *First Bank v. Tony's Tortilla Factory, Inc.*, for the proposition that late fees are not usurious interest.  In *First Bank*, the court held that an insufficient fund fee was not interest because it was a service charge constituting separate and additional consideration, other than the lending of money, for processing each bad check.  *Id.* at 287.  In other words, the Bank's consideration was not lending money, but rather, advancing funds to cover the bad check.  *Id*. at 288.  In its opinion, *First Bank* cited several cases holding that attorney's fees, commitment fees, prepayment penalties, and brokerage fees were also not considered usurious interest.  *Tex. Commerce Bank v. Goldring*, 665 S.W.2d 103, 104 (Tex. 1984); *Stedman v. Georgetown Sav. & Loan Ass'n*, 595 S.W.2d 486, 489 (Tex. 1979); *Bearden v. Tarrant Sav. Ass'n*, 643 S.W.2d 247, 249 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.); *Morris v. Miglicco*, 468 S.W.2d 517, 519 (Tex. Civ. App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.).  These cases holding fees did not constitute interest are distinguishable from this case because the fees in those cases were "bona fide fees paid to third parties for servicing late payments" or were contracted for.  *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1207 (5th Cir. 1985); *Goldring*, 665 S.W.2d at 104; *Stedman*, 595 S.W.2d at 489; *Bearden*, 643 S.W.2d at 248–49; *Morris*, 468 S.W.2d at 519.

24

sent for a late charge for eighteen units (months) at $35.00 per unit. Likewise, on the same date a statement was sent for $505.01 as finance charges on the overdue balance. Both of these December statements appear to include all interest and late charges to that date. However, the summary presented by Roberts calculates the total amount of interest charged, including late fees, to include each of the monthly charges in 2004 and also the summarized balance as noted in the December 2005 statements. If that is correct, the 2004 charges were included twice. The factual dispute is further demonstrated by a final WAS invoice suggesting that the total amount of late fees and interest charged was actually $1,521.98. $1,521.98 is the result of $1,750.95 less the additional 2004 charges listed on the summary.

So it appears a fact question exists as to whether the 2004 charges for interest and late fees were included twice as the interest charged in calculating damages.

We would modify the judgment and calculate the correct amount if the evidence established conclusively that a double recovery for 2004 interest was had. However, our observations merely present a fact issue which precluded summary judgment. Thus, we remand the issue of amount of damage to be awarded.

III.     **Admission of the Thacker Statements Was Proper**

The Thacker statements read, "I . . . was told on different occasions to put 3 ft of clay base on the racetrack by . . . Dennis Walker and this is what was agreed to by Dennis Walker and Royce Roberts."    "Hearsay included within hearsay is not excluded under the hearsay rule if each part

25

of the combined statements conforms with an exception to the hearsay rule." TEX. R. EVID. 805. The Walker Group contends the trial court erred in failing to sustain their objection that the Thacker statements contain hearsay within hearsay. However, according to Texas Rule of Evidence 801, the statements are nonhearsay within nonhearsay.

The admission or exclusion of evidence is a matter within the sound discretion of the trial court. *Daniels v. Yancey*, 175 S.W.3d 889, 895 (Tex. App.—Texarkana 2005, no pet.) (citing *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995)). Thus, we review the admission of the Thacker statements for abuse of discretion. *Id.* A trial court abuses its discretion when it acts without regard for any guiding rules or principles. *Holtzman v. Holtzman*, 993 S.W.2d 729, 734 (Tex. App.—Texarkana 1999, pet. denied) (citing *Downer v. Aquamarine Operators*, 701 S.W.2d 238 (Tex. 1985)).

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). Declarations of third persons may be binding on a party as vicarious admissions when made by the party's agent or servant concerning a matter within the scope of the agency or employment and made during the existence of the relationship. 35 TEX. JUR. 3d *Evidence* §§ 232, 234 (2008). Thacker's statement is such a declaration. A "statement by the party's agent or servant concerning a matter within the scope of his or her agency or employment, made during the existence of the relationship" is considered to be an admission by a party opponent and is not

26

hearsay. TEX. R. EVID. 801(e)(2)(D). David Thacker was WAC's foreman and supervisor. Allen Thacker was the equipment operator. Both Thackers were employed by the Walker Group and were authorized to discuss the job requirements, including the amount of clay needed on the track, with Roberts and Richey. The trial court was justified in its implied finding that the statements made by the Thackers, that they were "told on different occasions to put three feet of clay base," "this is what was agreed to by Dennis Walker and Royce Roberts," they were told on November 4, 2004, "to pick up all . . . equipment and leave," and that Walker "was not putting over one foot of clay on track," were matters within the scope of their employment and were made during the existence of their employment relationship with Walker. *See Southmark Mgmt. Corp. v. Vick*, 692 S.W.2d 157, 160 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

Further, any statement by a party opponent is admissible against that party. *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007). The Thacker statement implies that Walker told Thacker to put down three feet of clay. This would be an admission by party opponent since the statements were being offered by Roberts. *See Trencor, Inc. v. Cornech Mach. Co.*, 115 S.W.3d 145, 151–52 (Tex. App.—Fort Worth 2003, pet. denied). Thus, the trial court correctly determined the Thacker statements were not hearsay.

## IV. Legally and Factually Sufficient Evidence Supported the Jury Verdict

A jury was empanelled to determine the remaining issues. The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict

under review." *Hooper v. Smallwood*, 270 S.W.3d 234, 240 (Tex. App.—Texarkana 2008, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). In making this determination, we credit favorable evidence that could be found by a reasonable juror and disregard contrary evidence unless a reasonable juror could not. *Id*. As long as the evidence falls within the zone of reasonable disagreement, we will not substitute our judgment for that of the juror. *Id.* Although we consider the evidence in a light most favorable to the challenged findings, indulging every reasonable inference that supports them, we will not disregard evidence that allows only one inference. *Id.*

Since the Walker Group attacked the factual sufficiency of the jury's verdict, based upon its failure to find WAC substantially performed under the contract as alleged in its amended petition, they must now demonstrate that the adverse finding was against the great weight and preponderance of the evidence. *Id.* (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *In re Estate of Steed*, 152 S.W.3d 797, 806 (Tex. App.—Texarkana 2004, pet. denied)). In conducting our review of this issue, we consider and weigh all of the evidence and set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *Steed*, 152 S.W.3d at 806). We also keep in mind that the jury was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* (citing *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)).

28

The jury found that WAC failed to comply with the construction agreement, while Roberts did comply. The contract simply provided that Roberts would pay the lump sum price of $57,250.00 to WAC "to construct a 7/8 mile Horse Track . . . as per [Roberts'] instructions." It is undisputed that WAC did not complete the racetrack and that Walker ordered the Thackers to abandon the job. This would enable a reasonable and fair-minded jury to reach the conclusion that WAC breached the agreement. The primary dispute of the parties was the requirement of three feet of clay as a base. This issue was contested and a fact issue was presented to the jury, which it resolved in Roberts' favor. Combined with the wording of the contract implying payment conditioned upon performance per Roberts' instructions, and evidence tending to show three feet of clay was required, we conclude the evidence was not so weak or the finding so against the great weight and preponderance of the evidence that it was clearly wrong and unjust.

The Walker Group also argued the evidence was insufficient to support the jury finding that WAC did not substantially perform the contract. At best, Walker stated he believed fifty percent of the work was completed. This testimony was countered by Roberts' and Richey's testimony explaining that the track was under grade when left and that the track had to be re-tilled since Walker tilled the vegetation into the soil. Roberts also testified that it took a substantial amount of time and money to complete the project. Again, uncontroverted evidence established the Walker Group walked out on the job, supporting a finding that they did not intend to comply

29

with the contract in good faith.   We conclude the evidence was legally and factually sufficient to sustain the jury's finding that WAC did not substantially perform the contract.[16]

**V.      The Trial Court Did Not Err in Denying Walker's Requested Jury Instruction**

An instruction is proper if it might assist the jury in answering the submitted questions, accurately states the law, and finds support in the pleadings and evidence.   TEX. R. CIV. P. 277; *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992); *Wal-Mart Stores, Inc. v. Middleton*, 982 S.W.2d 468, 470 (Tex. App.—San Antonio 1998, pet. denied); *La. & Ark. Ry. Co. v. Blakely*, 773 S.W.2d 595, 598 (Tex. App.—Texarkana 1989, writ denied).   A trial court is afforded more discretion when submitting instructions than when submitting questions.   *Middleton*, 982 S.W.2d at 470.   Since the trial court has considerable discretion to determine necessary and proper jury instructions, we review a trial court's decision to refuse a particular instruction under an abuse of discretion standard.   *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006); *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000); *La. & Ark. Ry.*, 773 S.W.2d at 598.   An abuse of discretion occurs where a trial court acts arbitrarily, unreasonably, without consideration of guiding principles, or clearly fails to analyze or apply the law correctly. *Middleton*, 982 S.W.2d at 469; *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Downer*, 701 S.W.2d at 241–42.   When a trial court refuses to submit a requested instruction on an issue raised by the pleadings and evidence, we first determine if the instruction was reasonably necessary to enable the jury to render a proper verdict.

---

[16] Also, the above-recited evidence can be used to conclude it was sufficient for the jury to find Walker's nonperformance was not excused by some nonperformance of a material obligation or repudiation by Roberts.

*Shupe*, 192 S.W.3d at 579; *Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 912 (Tex. 2000) (referring to Texas Rules of Civil Procedure 277 and 278).

WAC asked the trial court to submit the following instruction along with the breach of contract question: "The Court has determined that the contract between the parties does not require Walker & Associates Construction to include a clay base three feet deep in constructing the horse track." In submitting the issue of breach to the jury, the trial court impliedly found that the issue of whether three feet of clay was necessary was a disputed fact and therefore required a jury determination. As written, the instruction would not assist the jury, but would be a determination as a matter of law on a disputed fact question. We conclude the trial court did not abuse its discretion in denying the proposed instruction.

## VI.    The Trial Court Did Not Err in Awarding Damages Based on Quantum Meruit

The jury found that the value of WAC's compensable work was \$13,200.00, and the trial court granted WAC a judgment against Roberts in that amount. "As a general rule, a plaintiff who seeks to recover the reasonable value of services rendered or materials supplied will be permitted to recover in quantum meruit only when there is no express contract covering those services or materials." *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988). There are two exceptions to the general rule. The first applies where a party partially performs a contract, but was prevented from completing the contract due to the other party's breach. *Id.* This fact situation does not exist here. Another exception exists when a plaintiff partially performs a

31

unilateral contract. *Id.* at 937. In dicta, *Truly* stated that Texas courts have allowed a breaching contractor to recover under quantum meruit where the owner has accepted and retained some benefit as a result of a contractor's partial performance. *Id.* (citing *City of Sherman v. Connor*, 88 Tex. 35, 29 S.W. 1053 (1895); *City of Ingleside v. Stewart*, 554 S.W.2d 939, 947 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.)).

Roberts urges this Court to follow the general rule. However, another Texas Supreme Court decision reiterates the dicta in *Truly* in holding that a breaching contractor can recover under quantum meruit even where there was no substantial performance under contract. *Murray v. Crest Constr., Inc.*, 900 S.W.2d 342, 345 (Tex. 1995) (stating construction contracts exception to general rule); *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990); 10 TEX. JUR. 3d *Building Contracts* § 56 (2003); COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., *Texas Pattern Jury Charges: Business Consumer Insurance Employment* PJC 101.42, 101.46 (2008). *But see R.M.Dudley Constr. Co. v. Dawson*, 258 S.W.3d 694, 703 (Tex. App.—Waco 2008, pet. denied) (applying general rule in upholding trial court's denial of recovery under quantum meruit theory). Thus, quantum meruit was available to the Walker Group.

"To recover on a claim for quantum meruit, appellant must show (1) he rendered valuable services, (2) for appellees, (3) they accepted his services, and (4) he rendered the services under circumstances as would reasonably notify them that he expected to be paid." *Johnson v. Kruse*, 261 S.W.3d 895, 901 (Tex. App.—Dallas 2008, no pet.); *Tully v. Citibank (South Dakota), N.A.*,

32

173 S.W.3d 212, 216 (Tex. App.—Texarkana 2005, no pet.). This was done. The jury found that WAC performed compensable work that Roberts knowingly accepted while also knowing that WAC expected payment.

In arguing that an additional finding of unjust enrichment is necessary, Roberts quotes *Truly* as follows: "to justify a recovery in quantum meruit, the plaintiff . . . must also show that the defendant has been unjustly enriched and the plaintiff would be unjustly penalized if the defendant were permitted to retain the benefits of the partial performance without paying anything in return." *Truly*, 744 S.W.2d at 938; *Dawson*, 258 S.W.3d at 702. Based on this quote in *Truly,* Roberts argues that since findings of unjust enrichment were not included in the jury questions, the trial court erred in making the award. In *Truly,* the Texas Supreme Court held that the general rule applied—a party may not recover under quantum meruit when there is an express contract on the matter. The further discussion concerning the exception to the general rule for construction cases, including the above quote, was dicta since *Truly* did not involve a claim for construction completed, but was a claim for services rendered to a joint venture. *Truly*, 744 S.W.2d at 936.

The measure of damages for a quantum meruit claim is the reasonable value of the work performed. *Johnson*, 261 S.W.3d at 902 (citing *Lamajak, Inc. v. Frazin*, 230 S.W.3d 786, 796 (Tex. App.—Dallas 2007, no pet.)). The Texas Pattern Jury Charges, upon which the trial court's charge was based, indicate that the measure of damages for quantum meruit is not different in construction contracts. COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., *Texas Pattern*

33

*Jury Charges: Business Consumer Insurance Employment* PJC 101.46, 115.6 (2008). Well-settled pattern jury charges should not be embellished with addendum. *Weeks Marine, Inc. v. Salinas*, 225 S.W.3d 311, 319 (Tex. App.—San Antonio 2007, pet. dism'd). What constitutes a reasonable compensation for benefits furnished does not depend on any single factor, but takes into account all the evidence and circumstances. *See* 64 TEX. JUR. 3d *Restitution Etc.* § 34 (2009).

The more recent Texas Supreme Court opinion in *Murray* specifically authorized a recovery on the theory of quantum meruit based on jury questions that were precisely the same as in this case. *Murray v. Crest Constr., Inc.*, 900 S.W.2d 342 (Tex. 1995). The jury question was: "Did Murray perform compensable work for Crest on the Borden and Cooper Jobs?" *Crest Constr. v. Murray*, 888 S.W.2d 931, 952 (Tex. App.—Beaumont 1994), *rev'd*, 900 S.W.2d 342 (Tex. 1995). The definition of compensable work is exactly the same as the jury instruction here. *Id.* The appellate court recognized "this is a submission on the quantum meruit theory of recovery," but held quantum meruit was unavailable because an express contract covered services provided by Murray, and the contract price was stipulated. *Id.* The Texas Supreme Court reversed, and based on those jury findings, held:

> Generally, a party may not recover under quantum meruit when there is an express contract covering the services or materials furnished. [citing *Truly*] Construction contracts are an exception to this rule. It is undisputed that Murray has failed to substantially perform the Borden and Cooper jobs, a condition precedent to recovery under the express contract. Murray may bring an action in quantum meruit to recover the amount of benefits conferred by its partial performance on to Crest.

*Murray*, 900 S.W.2d at 345. Importantly, the Texas Supreme Court did not require any further finding of unjust enrichment in *Murray*. We believe *Murray* provides the authority for a recovery in quantum meruit in this case.

> Roberts cites our language in *Box v. Au Forgeron de la Court-Dieu, Inc.*, stating:

> Recovery in quantum meruit, when the work has not been done in a good and workmanlike manner, is limited to the market value of the work as done less the cost of remedying the defects.

708 S.W.2d 538, 541 (Tex. App.—Texarkana 1986, writ ref'd n.r.e) (citations omitted). *Box* involved a case in which the jury expressly determined that the work was not done in a good and workmanlike manner. Because no such finding was submitted to the jury in this case, and we do not assume such a finding given the jury's belief that Walker performed compensable work, *Box* is inapplicable.

## VII. The Trial Court Did Not Err in Refusing to Award Walker Construction Eighteen Percent Interest

> If an owner . . . receives a written payment request from a contractor for an amount that is allowed to the contractor under the contract for properly performed work . . . the owner shall pay the amount to the contractor . . . not later than the 35th day after the date the owner receives the request.

TEX. PROP. CODE ANN. § 28.002 (Vernon 2000). "An unpaid amount required under this chapter begins to accrue interest on the day after the date on which the payment becomes due . . . An unpaid amount bears interest at the rate of 1 1/2 percent each month." TEX. PROP. CODE ANN. § 28.004 (Vernon 2000). WAC relies on the Prompt Payment Act to suggest that eighteen

35

percent prejudgment and post-judgment interest should have been awarded on its unjust enrichment recovery. TEX. PROP. CODE ANN. §§ 28.002, 28.004.

"As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion." TEX. R. APP. P. 33.1. Judicial economy requires that a trial court have the opportunity to correct an error before an appeal proceeds. *In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999). A motion for new trial, motion to modify or limit judgment, or exception to the judgment provides the trial court with such an opportunity. *Gerdes v. Kennamer*, 155 S.W.3d 523, 532 (Tex. App.—Corpus Christi 2004, pet. denied); *William S. Baker, Inc. v. Sims*, 589 S.W.2d 492, 493 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.).

Here, the Walker Group did not apprise the trial court of its complaint requesting eighteen percent interest in the motion for new trial. It also failed to file a motion to amend or modify judgment, or otherwise inform the trial court of the complaints. *See Hyde-Way, Inc. v. Davis*, No. 2-08-313-CV, 2009 WL 2462438, at *10 (Tex. App.—Fort Worth Aug. 13, 2009, no pet.) (mem. op.). Thus, the Walker Group has waived this point of error on appeal. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991).[17]

**VIII. Conclusion**

---

[17]Moreover, the Prompt Payment Act applies only when an obligor under a contract fails to pay timely in the absence of a good faith dispute.

36

We affirm the portion of the trial court's summary judgment finding interest charged by WAS usurious under Section 305.003 of the Texas Finance Code. However, we remand the issue of damages and attorney's fees awarded under this section for further proceedings consistent with our opinion. The trial court's award of summary judgment with respect to fraudulent lien claims and associated attorney's fees is reversed and remanded. Claims made under Section 305.004 of the Texas Finance Code, and their associated attorney's fee awards are reversed and judgment is rendered that Roberts take nothing on that claim. Otherwise, the judgment is affirmed.

Jack Carter
Justice

Date Submitted:     January 13, 2010
Date Decided:       February 26, 2010