# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00224-CV

---

**Madeleine Connor, Appellant**

**v.**

**Lauren Heather McMahan, Appellee**

---

### FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-22-006687, THE HONORABLE TODD A. BLOMERTH, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellee Lauren Heather McMahan filed an original petition in the trial court complaining of a document filed by appellant Madeleine Connor purporting to create a lien against McMahan's property. Connor filed a motion to dismiss under the Texas Citizen's Participation Act (TCPA), *see* Tex. Civ. Prac. & Rem. Code §§ 27.001–.011, which was overruled by operation of law thirty days after the court held a hearing on the matter, *id*. § 27.005(a). On April 17, 2023, Connor filed her notice of appeal, and on the same day, the trial court signed an order overruling the motion to dismiss and awarding McMahan attorney's fees. Connor challenges both the court's denial of her motion to dismiss and its award of attorney's fees. We affirm the denial of Connor's motion to dismiss under the TCPA, vacate the April 17 order, and remand the case to the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

Connor represented Adolfo Gallela, McMahan's ex-husband, from 2015, when McMahan filed suit to modify the parent-child relationship, through 2020. In May 2016, the trial court sent the parties a letter ruling stating that Gallela had incurred $111,960 in attorney's fees "for the safety and welfare of the child." McMahan was ordered to pay those fees through two $2,500 payments in May and June 2016 and then monthly $5,000 payments until paid in full, and Connor was instructed to prepare an order for the trial court to sign. In mid-June, Connor filed a Motion for Entry of Final Judgment on Interim Attorneys' Fees, asserting that McMahan had refused to pay the attorney's fees as awarded by the letter ruling. Connor attached emails between her and McMahan in which Connor asked McMahan to make the first payment and McMahan responded, "I recall her saying you were being denied interim fees. You saw my bank account, you know I don't have this money. I simply don't have it. I'll have to file an appeal." On June 20, 2016, the trial court signed an Order on Motion for Interim Attorneys' and Expert Fees, finding that McMahan had caused Gallela to incur $111,960 in attorney's fees "necessary to protect the safety and welfare of the child" and that Gallela should recover that sum from McMahan through monthly $5,000 payments payable to Connor. McMahan did not appeal from or seek mandamus review of the letter ruling or the interim order.

On February 13, 2017, Connor filed with the Travis County Clerk the document that is the basis of McMahan's underlying lawsuit—a Request for Abstract of Judgment, attaching to it a copy of the June 2016 Interim Order. In the Request, Connor named McMahan as obligor and herself as claimant and obligee and stated, "The amount of obligation currently owed to obligee by obligor is $111,960.00, which obligor is ordered to pay $5,000.00, on the first of each month, based on a court order signed on June 20, 2016, which is attached." The

Request also stated that the "money judgment" had been awarded in the McMahan/Gallela child-custody case and that "[a] lien attaches to any nonexempt personal or real property of the obligor located or recorded in Texas," including any property acquired after the filing of the notice.

In addition to filing the Request for Abstract of Judgment, Connor also filed in the child-custody case several other documents related to the June 2016 Interim Order: a July 2016 motion to enforce payment of the attorney's fees, asking that McMahan be held in contempt for her failure to pay the fees; a September 2019 first amended motion for entry of judgment asking the trial court to enter a final judgment on the June 2016 Interim Order and enforce the interim order; and a January 2020 motion asking to have the interim attorney's fees issue severed from the rest of the case. The motion to sever was denied in April 2020, and the record does not reflect that the earlier motions were ruled on.

In December 2020, Connor withdrew as Gallela's attorney, and in August 2021, the trial court signed a final order in the suit stating that both parents appeared pro se and providing that each party would bear their own attorney's fees. In mid-September 2021, Connor filed a petition in intervention asserting that McMahan had not paid any of the $111,960 she had been ordered to pay, along with a motion for new trial and a motion to modify, correct, or reform the judgment. In October 2021, the trial court signed an order granting Connor's and McMahan's joint motion to non-suit Connor's petition in intervention, motion to modify, and motion for new trial, as well as McMahan's motion to strike the intervention.

3

On August 4, 2022, according to McMahan's petition in the underlying case, the trial court signed an Agreed Declaratory Judgment that stated:[1]

The Court FINDS that the Order on Motion for Interim and Expert Fees signed in this cause on June 20, 2016, was never reduced to Judgment.

The Court FURTHER FINDS that the Order on Motion for Interim and Expert Fees signed on June 20, 2016, was superseded by the Order in Suit to Modify Parent Child Relationship, dated August 19, 2021, which provided in relevant part [that it] "IS ORDERED that attorney's fees are to be borne by the party who incurred them."

IT IS THERFORE ORDERED that no judgment exists, no judgment has ever existed, and no judgment will ever exist based on the June 20, 2016, Order on Motion for Interim and Expert Fees.

IT IS FURTHER ORDERED that any abstract of judgment filed with the real property records of Travis County or any other County in the State of Texas was filed without any basis in law, and any lien or encumbrance attached to any real property by LAUREN HEATHER McMAHAN is invalid and shall be released; including, but not limited to the following:

> 1. Request for Abstract of Judgment, filed in Instrument No. 2017024384 of the Official Public Records of Travis County, Texas.

IT IS FURTHER ORDERED that this Declaratory Judgement may be filed with the real property records in any county in which LAUREN HEATHER McMAHAN ow[n]s property to serve as sufficient notice to remove any lien or encumbrance upon real or personal property erroneously based on any invalid abstract of judgment that has been improperly filed before this date.

On October 12, 2022, McMahan's attorney sent Connor a letter asking her to sign a release of lien within twenty-one days, asserting that the lien was fraudulent as defined by the government code. *See* Tex. Gov't Code § 51.901(c). On November 17, after Connor had not yet signed the release, McMahan filed the underlying suit asserting a claim for filing a fraudulent lien, *see* Tex. Civ. Prac. & Rem. Code §§ 12.001–.007, and seeking statutory and exemplary

---

[1] The declaratory judgment was not included in the clerk's record, but Connor does not dispute McMahan's assertion that it was signed or her recitation of its contents.

damages, attorney's fees, and equitable relief in the form of "a judicial determination of the status of" Connor's attempted lien. McMahan alleged that the lien had caused her to incur attorney's fees and had adversely affected her ability to refinance or sell her home, which could lead to her home being foreclosed upon.

Connor filed a motion to dismiss under the TCPA, asserting that McMahan's claims were based on and in response to Connor's right to petition and right of free speech. *See id.* §§ 27.003, .005(b). That same day, on January 31, 2023, Connor signed a release of lien, and her attorney emailed it to McMahan's attorney on February 16, with a note stating, "Please see the attached release of lien. Let me know if this will resolve the case." The release states:

> That on August 4, 2022, the Travis County District Court entered an Agreed Order, without [Connor's] knowledge, ordering that the Request for Abstract of Judgment be released and that the Agreed Order may be filed with the real property records and would serve as sufficient notice to remove any lien or encumbrance upon real or personal property as recited in the lien.

> That, to avoid any confusion, and to the extent necessary since the Travis County District Court has already dissolved the lien in its August 4, 2022, Agreed Order, [Connor] forever and for all time RELEASES AND DISCHARGES any claim in her name, Madeleine Connor, to the nonexempt personal or real property of Lauren Heather McMahan located or recorded in Texas from said Request for Abstract of Judgment.

The trial court held a hearing on Connor's motion on March 9, 2023. On April 15, Connor electronically submitted a notice of appeal asserting that her motion to dismiss had been denied by operation of law on April 10; her notice of appeal was file stamped on April 17. *See id.* §§ 27.005, .008. On April 17, the trial court signed an order denying Connor's motion, finding that the motion was frivolous and awarding McMahan $14,407.13 in attorney's fees. On April 24, Connor filed an objection asserting that after she filed her notice of appeal, all matters had been stayed, and that the April 17 order was therefore void.

5

**DISCUSSION**

Connor raises four issues on appeal: that she established that the TCPA applies; that McMahan did not present a prima facie case for each essential element of her claims; that even if McMahan did carry that burden, Connor established the affirmative defenses of judicial-proceeding privilege and limitations; and that the trial court's order, which included an award of attorney's fees and was signed after Connor filed her notice of appeal, was void.

*Does the TCPA Apply?*

Although McMahan insists that the TCPA does not apply to her claims, case law indicates otherwise. In *Smith Robertson, L.L.P. v. Hamlin*, this Court considered whether claims related to a law firm's attempts to domesticate a judgment from another state were subject to the TCPA, holding that they were because the submission of the out-of-state judgment and a renewal of that judgment were communications in or pertaining to a judicial proceeding. No. 03-18-00754-CV, 2019 WL 3023304, at *2 (Tex. App.—Austin July 11, 2019, pet. denied) (mem. op.). And in *Serafine v. Blunt*, we concluded that a fraudulent-lien counterclaim was subject to the TCPA because it was based on, related to, or in response to the filing of a lis pendens, which was an exercise of the "right to petition." 466 S.W.3d 352, 360 (Tex. App.—Austin 2015, no pet.).

Our sister courts of appeals have held similarly. In *Howard v. Matterhorn Energy, LLC*, the court of appeals considered whether a claim for tortious interference arising out of the filing of a lawsuit and lis pendens was subject to the TCPA, holding that both the filing of a lawsuit and the filing of a lis pendens were exercises of the right to petition. 628 S.W.3d 319, 331–32 (Tex. App.—Texarkana 2021, no pet.). The court in *James v. Calkins* held that a

6

fraudulent-lien claim was subject to the TCPA because it was based on, related to, or in response to a lis pendens, explaining that the lis pendens gave notice of claims made in a lawsuit, which the court held were communications made in or pertaining to a judicial proceeding. 446 S.W.3d 135, 147–48 (Tex. App.—Houston [1st Dist.] 2014, pet. denied), *abrogated on other grounds by Montelongo v. Abrea*, 622 S.W.3d 290 (Tex. 2021). In *Quintanilla v. West*, the plaintiff asserted fraudulent-lien claims after the defendant recorded in the public records financing statements made and filed in anticipation of litigation over debt. 534 S.W.3d 34, 46–47 (Tex. App.—San Antonio 2017), *rev'd on other grounds*, 573 S.W.3d 237 (Tex. 2019). Because the statements "were filed in the context of impending litigation," the court held that they were made in exercise of the right to petition and thus were subject to the TCPA. *Id*. And finally, in *Martin v. Bravenec*, the court held that the TCPA applied to a claim for tortious interference filed after the defendant filed a lis pendens and other documents related to his claim of an interest in property. No. 04-14-00483-CV, 2015 WL 2255139, at *6 (Tex. App.—San Antonio May 13, 2015, pet. denied) (mem. op.).

We acknowledge that an abstract of judgment is not the same as a lis pendens, which provides notice that there is a pending claim involving title to, an interest in, or an encumbrance against real property. *See* Tex. Prop. Code § 12.007. An abstract of judgment, on the other hand, "is a necessary step to convert a money judgment into a judicial lien that may later be executed against real property to satisfy a judgment." *Nath v. Baylor Coll. of Med.*, No. 01-20-00401-CV, 2022 WL 1038372, at *6 (Tex. App.—Houston [1st Dist.] Apr. 7, 2022) (mem. op.), *judgment vacated and remanded by agreement*, No. 22-0785, 2023 WL 8898844 (Tex. Dec. 22, 2023); *see also* Tex. Prop. Code § 52.001 (abstract of judgment creates lien on judgment debtor's non-exempt real property located in county where abstract is filed). In other

7

words, "[t]he purpose of an abstract of judgment is to create a lien against the debtor's property and to provide notice to subsequent purchasers and encumbrancers of the existence of the judgment and the lien." *Wilson v. Dvorak*, 228 S.W.3d 228, 233 (Tex. App.—San Antonio 2007, pet. denied). Although an abstract of judgment creates a lien based on an already established judgment, while a lis pendens provides notice of a pending claim, both documents act to encumber property and to provide notice of a complication related to a property's title to would-be purchasers. Both documents amount to communications in or pertaining to a judicial proceeding. McMahan's fraudulent-lien claim complained of Connor's filing of a Request for Abstract of Judgment, which asserted that McMahan owed Connor attorney's fees under the June 2016 Interim Order in the then-pending child-custody case. That amounts to a communication made in or pertaining to a judicial proceeding. *See* Tex. Civ. Prac. & Rem. Code § 27.001(4). We hold that Connor established that the TCPA applied to McMahan's claim and sustain Connor's first issue on appeal.

### *Did McMahan Establish A Prima Facie Case?*

The standards applied in TCPA cases are well established. *See, e.g.*, *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 131–32 (Tex. 2019); *Serafine*, 466 S.W.3d at 357–58. Once the movant establishes that the TCPA applies to the non-movant's claim, the trial court must dismiss the action unless the non-movant presents a prima facie case by bringing forth clear and specific evidence of each essential element of its claim. *Creative Oil & Gas*, 591 S.W.3d at 132. Even if the non-movant establishes a prima facie case, the court must still dismiss if the movant establishes the essential elements of a valid defense by a preponderance of the evidence. *Id.* We review de novo the trial court's determinations as to

8

whether the parties presented sufficient evidence to carry their various and shifting burdens. *Serafine*, 466 S.W.3d at 357–58. "The term 'clear and specific evidence' refers to the quality of evidence required to establish a prima facie case, while the term 'prima facie case' refers to the amount of evidence required to satisfy the nonmovant's minimal factual burden." *Warner Bros. Ent., Inc. v. Jones*, 538 S.W.3d 781, 799 (Tex. App.—Austin 2017) (citing *Combined Law Enf't Ass'n of Tex. v. Sheffield*, No. 03-13-00105-CV, 2014 WL 411672, at *10 (Tex. App.—Austin Jan. 31, 2014, pet. denied) (mem. op.)), *aff'd*, 611 S.W.3d 1 (Tex. 2020). Clear and specific evidence is evidence that provides "enough detail to show the factual basis" for the claim and goes beyond "mere notice pleading." *In re Lipsky*, 460 S.W.3d 579, 590–91 (Tex. 2015) (orig. proceeding). A prima facie case means evidence that, if not rebutted, is sufficient to establish a fact as a matter of law or "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id*. at 590. "Conclusory statements are not probative and accordingly will not suffice to establish a prima facie case." *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 355 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (citing *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223–24 (Tex. 2004) (orig. proceeding)); *see also Lipsky*, 460 S.W.3d at 592 ("bare, baseless opinions" do not satisfy TCPA's clear-and-specific-evidence requirement).

To establish a prima facie case of her fraudulent-lien claim, McMahan had to present evidence that Connor (1) presented the Request for Abstract of Judgment with knowledge that it was fraudulent, (2) intended the document to be given legal effect as a valid lien, and (3) intended to cause harm to McMahan. *See* Tex. Civ. Prac. & Rem. Code § 12.002(a); *Serafine*, 466 S.W.3d at 363.

9

In the context of Section 12.002(a), "fraudulent" is the "knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment." *MFG Fin., Inc. v. Hamlin*, No. 03-19-00716-CV, 2021 WL 2231256, at *4 (Tex. App.—Austin June 3, 2021, pet. denied) (mem. op.) (citing *Walker & Assocs. Surveying, Inc. v. Roberts*, 306 S.W.3d 839, 849 (Tex. App.—Texarkana 2010, no pet.)). A lien may be invalid and unenforceable but not necessarily fraudulent, so a Section 12.002(a) claimant must show that the document was made, presented, or used to perpetrate a fraud, not merely factually inaccurate. *See id.* at *4 (citing *Walker*, 306 S.W.3d at 849).

McMahan asserted that Connor had personal knowledge that the Request was fraudulent because she knew that the attorney's fee award had not been reduced to a final judgment, that McMahan did not consent to the lien, and that there was no other basis for the purported lien. As evidence, McMahan provided copies of the June 2016 Interim Order, the February 2017 Request for Abstract of Judgment, and various other documents. She also provided her own affidavit, in which she averred:

- During 2016, Connor tried to enforce the June 2016 Interim Order, and in December 2016, she called McMahan in an attempt to collect the awarded attorney's fees. In that call, McMahan stated, Connor acknowledged that the award had not been reduced to a final judgment and that "[McMahan] may win on 'some of [her] arguments' at a later hearing to reduce or eliminate that award of attorney's fees."

- McMahan was unaware of Connor's lien until she checked the "equity for [her] home and found the lien, in addition to a purported child support lien that [Connor] filed. [McMahan] was able to have the child support lien removed from my real property, but not the lien for purported attorney's fees." McMahan did not state when she made that discovery but did aver that in January or February 2017, when McMahan was preparing to hold an open house to try to sell her home, Connor entered the house and told McMahan "that she would foreclose on the purported lien she had filed and would force my home and belongings to be sold to satisfy the purported lien."

10

- Connor also sent the lien to McMahan's bank, causing McMahan "significant harm" when the bank froze her accounts, resulting in "over $3,000.00 in fees over the years" and a steep reduction in her credit score, which had "made it impossible" for her to refinance the current adjustable-rate mortgage (ARM) on her home, obtain home-equity loans, or use her credit in her "normal line of business as a real estate investor." Because she could not refinance the ARM, her mortgage payments had increased "by at least $300.00 per month in the last year, for total increase annually of over $3,600.00, and could continue to increase," making "it financially impractical, if not impossible, for [her] to afford the mortgage." The lien also harmed McMahan's ability to sell the home.

- In addition, Connor's filing of the "purported liens" dissuaded McMahan from opening other bank accounts over the last six years because she "fear[ed] that [the] purported liens would also be reported to any new institution, and any new accounts would also be frozen." McMahan explained that when she "inherited a small bank account from [her] father" in 2020, Connor forwarded her lien to that bank, resulting in the freezing of the inherited account. "This has caused [McMahan] to be unbanked for this time, forcing [her] to operate on a cash basis or with money orders, which require [her] to pay additional fees on top of any expenses [she] must use the money orders for."

- Connor's filing of the lien had caused McMahan "emotional duress for more than five years." McMahan explained that the "stress of having to operate on a cash basis," being unable to open a new bank account lest Connor attempt to freeze the account, and being at risk of having to sell her home or personal belongings to "satisfy a non-existent judgment" had caused her "significant emotional distress" and even physical symptoms of stress. She stated that she had been diagnosed as suffering from Post-Traumatic Stress Disorder "that relates to this financial abuse by [Connor]" and that she had incurred attorney's fees related to Connor's efforts to collect on the attorney's fees award.

McMahan argues that Connor's knowledge that the Request for Abstract of Judgment was fraudulent can be inferred from the following facts:

- Connor asked the trial court to sign a "Final Judgment on Interim Fees," attaching an order to her Motion for Entry of Final Judgment on Interim Fees. However, the trial court signed a different interim order on June 16, awarding the fees to Gallela and not to Connor, ordering McMahan to pay the fees directly to Connor, and removing Connor's proposed language that stated, "All for which let execution issue forthwith, including interest compounding at 20% per annum."

- Connor filed a motion to enforce the interim order in July 2016. The record does not reflect what further action was taken on that motion.

11

- In December 2016, Connor called McMahan to attempt to collect on the interim order and during that call acknowledged that the award had not been reduced to a final judgment and that the attorney's fees could be reduced or eliminated in a future hearing.

McMahan further argues that fraudulent intent can be inferred from Connor's later conduct because she continued to try to have the interim order reduced to a final judgment in September 2019 and January 2020 and in 2021, after she withdrew from the case and the final judgment was signed, intervened in the suit asking to have a judgment for the fees entered on her behalf. Finally, McMahan asserts that the Request for Abstract of Judgment was deficient on its face because Connor "alleged the existence of a non-existent judgment," asserted that Connor was the obligee instead of Gallela, and stated an amount of obligation without identifying the obligation as a judgment.

The family code provides for and distinguishes between interim attorney's fees and a judgment for attorney's fees awarded at the end of the case, thus allowing for the award of fees both during and at the conclusion of a case. A trial court may render judgment at the conclusion of a case for reasonable attorney's fees, "order[ing] the judgment and postjudgment interest to be paid directly to an attorney," and such a judgment "may be enforced in the attorney's name by any means available for the enforcement of a judgment for debt." Tex. Fam. Code § 106.002. Although "section 106.002 does not permit fees before a judgment," section 105.001 does allow for interim fees. *In re Rigg*, No. 05-21-00342-CV, 2022 WL 908951, at *8 (Tex. App.—Dallas Mar. 29, 2022, orig. proceeding) (mem. op.). Under Section 105.001, a trial court "may make a temporary order . . . for the safety and welfare of the child" for the payment of reasonable attorney's fees. Tex. Fam. Code § 105.001(a)(5).

12

The June 2016 Interim Order states that McMahan had caused Gallela to incur $111,960 in attorney's fees "that were necessary to protect the safety and welfare of the child," thus tracking the language of Section 105.001(a). *See id.*; *Rigg*, 2022 WL 908951, at *8. Connor then filed a motion to enforce that interim order, which was the proper vehicle for obtaining payment of the attorney's fees, but never obtained an order on that motion and instead proceeded to file her Request for Abstract of Judgment despite knowing that she did not have a final judgment on which to base a lien. *See* Tex. Fam. Code § 105.001(f) (violation of temporary order "rendered under this section is punishable by contempt and the order is subject to and enforceable under Chapter 157"); *Ex parte Hall*, 854 S.W.2d 656, 658 (Tex. 1993) (orig. proceeding) (order under Section 105.001's precursor was enforceable by contempt); *Ex parte Kimsey*, 915 S.W.2d 523, 525 (Tex. App.—El Paso 1995, orig. proceeding) (Family Code allows trial court to order interim attorney's fees and to punish violation of such order by contempt).

Although Connor asserts that she should be excused from culpability because she both attached the interim order, thus "allow[ing] anyone who might have been confused to look directly at the order on which it was based, to avoid misrepresenting anything," and referred to it as a "court order" in the paragraph setting out the amount owed by McMahan, her document was titled "Request for Abstract of *Judgment*"; it stated that a "money judgment" had been signed in the family case between McMahan and Gallela; and it named Connor as "claimant" and "obligee" while the award of attorney's fees was made to *Gallela*, not Connor, albeit with payment ordered to be made to Connor. Further, McMahan presented evidence that Connor made other unsuccessful attempts to reduce the attorney's fee award to an enforceable judgment, bolstering an inference that she knew when she filed the Request that the interim order was not a legitimate document on which to base a purported lien.

13

McMahan presented evidence (1) that Connor, a licensed attorney, apparently knew the proper means of obtaining payment on the interim order; (2) that no final judgment had been signed when Connor filed the Request for Abstract of Judgment; and (3) that Connor knew no final judgment existed, even conceding to McMahan that the issue was not settled and might be changed when the family case was finalized. We thus hold that McMahan provided a prima facie case that Connor knew, at the time she filed her Request for Abstract of Judgment, that it was invalid and unenforceable and was trying to perpetuate a fraud by filing a document that purported to assert a lien based on a money judgment. *See MFG Fin.*, 2021 WL 2231256, at *4 ("fraudulent" is knowing misrepresentation of truth or concealment of material fact to induce another to act to her detriment).

We further hold that McMahan presented a prima facie case that Connor intended to cause physical injury, financial injury, or mental anguish or emotional distress. *See* Tex. Civ. Prac. & Rem. Code § 12.002(a)(3). McMahan provided evidence that Connor contacted McMahan several times attempting to obtain payment of the ordered attorney's fees and threatened to foreclose on her purported lien at an open house held in early 2017, around the time she filed the Request for Abstract of Judgment. Although there is no evidence that Connor sought to foreclose or took other formal action to enforce the purported lien, Connor's act of filing the Request for Abstract of Judgment in county records hampered McMahan in her attempts to sell or refinance her house, and McMahan averred that Connor also sent the Request to McMahan's bank, causing her accounts to be frozen and her credit score to plummet. And although Connor sought attorney's fees awarded in a valid court order, an obligation that remained live until it was superseded by the final judgment in August 2021, she did not obtain an order on her motion to enforce the interim order, which would have been the appropriate way to

14

obtain payment, and instead filed her Request for Abstract of Judgment, harming McMahan's ability to sell or refinance her house, causing her bank accounts to be frozen, and leading to the downgrading of her credit score.

We hold that McMahan presented a prima facie case of the essential elements of her fraudulent-lien claim. We overrule Connor's second issue on appeal.

*Did Connor Establish an Affirmative Defense Entitling Her to Dismissal?*

Connor next argues that even if McMahan carried her burden of presenting a prima facie case, Connor was entitled to dismissal under the affirmative defenses of judicial-proceeding immunity and limitations. We disagree.

Connor asserts that she is entitled to dismissal because "[a]ctions taken and statements made during the course of a judicial proceeding are absolutely privileged," invoking judicial-proceeding privilege as an affirmative defense. "Communications made during the course of judicial proceedings are privileged," *Bird v. W.C.W.*, 868 S.W.2d 767, 771 (Tex. 1994), and this privilege is commonly applied in defamation cases but extends to bar any tort litigation based on the content of such communications, *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 46 (Tex. 2021). "Texas courts have consistently applied the privilege to claims arising out of communications made in the course of judicial proceedings, regardless of the label placed on the claim," and "the privilege should be extended beyond defamation when the essence of a claim is damages that flow from communications made in the course of a judicial proceeding." *Laub v. Pesikoff*, 979 S.W.2d 686, 690–91 (Tex. App.—Houston [1st Dist.] 1998, pet. denied.). The privilege has been held to bar a case seeking damages for the

15

filing of a lis pendens. *See, e.g., Prappas v. Meyerland Cmty. Improvement Ass'n*, 795 S.W.2d 794, 797 (Tex. App.—Houston [14th Dist.] 1990, writ denied).

Connor relies on two cases out of the Fourteenth Court of Appeals, which applied the judicial-proceeding privilege to bar fraudulent-lien suits filed under Section 12.002—*Jetall Companies, Inc. v. Van Dyke*, No. 14-19-00104-CV, 2019 WL 2097540 (Tex. App.—Houston [14th Dist.] May 14, 2019, no pet.), and *County Investment, LP v. Royal West Investment, LLC*, 513 S.W.3d 575 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Those cases, however, simply followed *Prappas*, which was decided before Section 12.002 was enacted, and provide little, if any, discussion of the fact that Section 12.002, enacted after *Prappas* was decided, explicitly provides for the recovery of damages for the filing of a fraudulent lien document. In *County Investment*, after acknowledging that *Prappas* only involved claims for slander of title and tortious interference, the court simply concluded that *Prappas* should apply to a claim for filing a fraudulent lien because its reasoning "was not limited to the claims asserted in the suit or contingent on the motives of the party placing the lis pendens." 513 S.W.3d at 581. And in *Jetall*, the court followed *County Investment*, stating that it was "bound by the precedent of this court" to hold that a "fraudulent lien claim is barred by the defense of absolute privilege." 2019 WL 2097540, at *6. The *Jetall* court noted that "there are remedies for nullifying an unauthorized lis pendens, including a statutory method for cancellation, or other request for an appropriate order from the trial court, with mandamus relief available if the trial court refuses to order cancellation," and stated, "In fact, we noted that 'impossibility' of recovering damages is why courts have given a broad reading to the statute governing cancellation." *Id*.

We are persuaded to follow the Dallas court, which in *Campbell v. Martell* noted that the *County Investment* court "merely extended its holding in *Prappas*, without

16

analyzing the effect of the legislature's enactment of section 12.002." No. 05-19-01413-CV, 2021 WL 1731754, at *11 (Tex. App.—Dallas May 3, 2021, no pet.) (mem. op.). The *Campbell* court held, "This conclusion stands in direct contrast to section 12.002's prohibition on filing a fraudulent court record, lien, or property claim," and observed that Section 12.002 "establishes a statutory remedy" for filing such a document. *Id*.

Section 12.002 specifically provides a statutory remedy for damages in a fraudulent-lien claim, and the application of the privilege to such claims would be illogical and would essentially nullify the Legislature's enactment of the statute. We hold that Connor's assertion of the judicial-proceeding privilege did not defeat McMahan's statutory fraudulent-lien claim under Section 12.002. *See id*.

Nor can the judicial-proceedings privilege be applied to McMahan's request for a declaration that the Request for Abstract of Judgment was improper or invalid. *See Smith v. 2005 Tower LLC*, No. 09-22-00350-CV, 2024 WL 3616470, at *9 (Tex. App.—Beaumont Aug. 1, 2024, pet. denied) (mem. op.) ("Although [judicial-proceeding] privilege bars claims seeking civil damages for defamatory statements in a notice of lis pendens, the privilege does not bar claims seeking a declaration that a lis pendens is wrongful or invalid."); *Mireskandari v. Casey*, 636 S.W.3d 727, 739 (Tex. App.—Dallas 2021, pet. denied) (judicial-proceedings privilege did not apply because essence of claim "was not damages but declaratory relief").

Connor also argues that she is entitled to dismissal because McMahan's claims are barred by the statute of limitations. However, as noted by McMahan, Connor raised that issue for the first time in her reply to McMahan's response to Connor's motion to dismiss—she did not plead limitations as an affirmative defense in her motion to dismiss (indeed, she did not even assert it in her answer or amended answer that were on file at the time she filed her motion

to dismiss). Connor waived the right to seek TCPA dismissal under a limitations defense because she did not assert it in her motion to dismiss. *See Edry-TX-II, GP v. CCND-Main ST Shopping Ctr., LP*, 683 S.W.3d 450, 458–59 (Tex. App.—Houston [14th Dist.] 2023, pet. denied) (TCPA requires motion to dismiss to be filed within sixty days after service, but limitations defense was not asserted until defendant replied to plaintiff's response to TCPA motion; court held that assertion of defense in reply, even if reply was "construed as a motion in this case," would be untimely because it was served more than sixty days after service).

We overrule Connor's third issue on appeal.

*Order Awarding Attorney's Fees Under TCPA*

In her fourth issue, Connor asserts that the trial court erred in signing its April 17 order purporting to deny Connor's motion to dismiss and award attorney's fees to McMahan under the TCPA. We agree. The trial court held a hearing on Connor's motion to dismiss on March 9, 2023, thus had until April 10 to sign an order. *See* Tex. Civ. Prac. & Rem. Code § 27.005. The court notified the parties via an email sent on March 15 that it intended to deny Connor's motion, asking McMahan's attorney to draft an order reflecting that decision and awarding attorney's fees as reflected in an exhibit attached to McMahan's response, and McMahan sent a proposed order, noting that Connor was objecting to the attorney's fees award. However, on March 21, the court emailed counsel, "Out of courtesy to the Defendant, if both attorneys indicated this litigation was being resolved I would not object to holding off entry of order but only for a short period of time," and Connor responded that she would "explore settlement." On April 11, the trial court inquired whether an order needed to be entered. Connor replied that "the parties have tentatively agreed on a mediation date and mediator" but that there

18

were "no firm agreements yet," and then Connor updated the court on April 13 that the parties had agreed to a May 22 mediation and a December trial date. The trial judge replied on Friday, April 14 that he was available for the proposed trial date but was "still not clear on whether the parties are wanting him to hold off on entering the order." Connor electronically filed her notice of appeal on April 15, and it was file stamped at midnight on April 17. On the morning of April 17, McMahan's attorney informed the court that Connor had filed a notice of appeal and that he "believe[d] that an order should be entered so that the record is complete." Connor's attorney responded that he believed all proceedings in the trial court were stayed, but the trial court signed its order awarding attorney's fees later in the day. Connor filed an objection to that order, and the trial court overruled the objection in an order in which the court explained that it informed the parties of its decision on March 15 but had held off on entering an order because the parties indicated that they were attempting to settle the case. The court noted, "After additional inquiry was made as to entry of the written order, Defendant filed her interlocutory appeal, maintaining the matter had been overruled by operation of law. In fact, this court had made a decision of which Defendant was aware, having made both parties aware of its decision well within the time required by statute."

The Texas Supreme Court recently explained that pronouncement of judgment is distinct from rendition, which:

> requires a present act, either by spoken word or signed memorandum, that decides the issues on which the ruling is made. If the judge's words only indicate an intention to render judgment in the future or to provide guidelines for drafting a judgment, the pronouncement cannot be considered a present rendition of judgment.

19

*Baker v. Bizzle*, 687 S.W.3d 285, 292 (Tex. 2024). Although we are sympathetic to the trial court's efforts to facilitate the settlement of the case, and although the trial court was clear in its intent to deny Connor's order and award attorney's fees, the record establishes that the court had not rendered judgment within thirty days of the hearing on Connor's motion to dismiss or by the time Connor filed her notice of appeal. *See Inwood Forest Cmty. Improvement Ass'n v. Arce*, 485 S.W.3d 65, 72 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (oral ruling was ineffective because "the judge's statements reflect her intent to rule on the Homeowners' motions to dismiss at some point in the future rather than to make a present rendition of judgment granting the Homeowners' motion to dismiss the Association's case on that day"). We have no alternative but to declare that the order signed after the appeal was filed—and objected to by Connor—was of no effect. *See, e.g.*, *Roccaforte v. Jefferson County*, 341 S.W.3d 919, 923 (Tex. 2011) (judgment signed during stay was voidable). We sustain Connor's fourth issue.

## CONCLUSION

We have held that the TCPA applied to McMahan's fraudulent-lien claim, that McMahan established a prima facie case of each essential element of her claims, and that Connor did not establish that she was entitled to dismissal on her asserted affirmative defenses. We therefore affirm the court's denial of Connor's motion to dismiss under the TCPA. However, we agree that the order awarding attorney's fees that was signed after Connor filed her notice of appeal was voidable. We vacate the trial court's April 17 order and remand the case for further proceedings.

20

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Triana and Smith

Vacated and Remanded

Filed:   December 31, 2024