

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-24-00633-CV

Chris **LINGLE**,
Appellant

v.

**SAGE ARCHITECTURE, INC.,**
Appellee

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2024-CI-09134
Honorable Norma Gonzales, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Lori I. Valenzuela, Justice
Lori Massey Brissette, Justice
H. Todd McCray, Justice

Delivered and Filed: July 23, 2025

AFFIRMED

In this appeal, appellant Chris Lingle challenges the trial court's dismissal of his claims pursuant to the Texas Citizens Participation Act ("TCPA") and Texas Rule of Civil Procedure 91a. We affirm.

**BACKGROUND**

This dispute arises out of actions taken in a separate but related lawsuit. In that separate lawsuit, Sage Architecture, Inc. sued Lingle and his wife, Sarah, alleging that Sarah, who had been a former employee at Sage, embezzled over $1.6 million from Sage and that Lingle was part of a conspiracy to do so (the "Embezzlement lawsuit").[1] In November 2022, because Lingle did not file an answer or appear in the Embezzlement lawsuit, Sage secured a default judgment against Lingle only for $418,816.72, plus pre- and post-judgment interest. Lingle filed a motion for new trial, which the trial court denied. The record does not show that Sage severed the default judgment against Lingle from its claims against Sarah or that the judgment against Lingle was otherwise a final judgment.

After the default judgment was entered, Sarah filed for divorce. In January 2024, Sage moved to intervene in the pending divorce proceeding, asserting that it was a judgment creditor of Lingle pursuant to the judgment in the Embezzlement lawsuit, and requested that its interest be considered in dividing the marital estate. Subsequently, in March 2024, Sage filed an abstract of judgment and request for writ of execution in the Bexar County property records based on the judgment against Lingle in the Embezzlement lawsuit. Sage also sent a letter to counsel involved in probating Lingle's father's estate ("Probate counsel"). Relevant to this appeal, in the letter, counsel for Sage described the circumstances surrounding the Embezzlement lawsuit and represented to Probate counsel that "Sage is a judgment creditor" of Lingle and that Sage was "pursuing judgment remedies against him." In April 2024, a writ of execution was issued to Sage in connection with its request regarding the default judgment.

---

[1] On December 6, 2023, a federal grand jury true billed a nine-count indictment against Sarah related to her employment at Sage.

Following Sage's filings in the Bexar County property records, intervention into the divorce proceeding, and letter to Probate counsel, Lingle filed the lawsuit underlying this appeal against Sage. In his live petition, Lingle alleged claims against Sage for filing a fraudulent lien, engaging in common law unreasonable collection efforts, and defamation. Sage moved to dismiss Lingle's claims under the TCPA and Texas Rule of Civil Procedure 91a. Addressing its TCPA motion, Sage asserted the TCPA applied to Lingle's claims, and Lingle could not meet his burden under the TCPA. As to its Rule 91a motion, Sage contended Lingle's claims had no basis in law. Sage concluded that even if Lingle met his respective burdens under the TCPA and Rule 91a, Sage was entitled to dismissal because the judicial proceedings privilege protected its actions.

After a hearing, the trial court dismissed Lingle's claims with prejudice under the TCPA and Rule 91a and awarded Sage attorney's fees. On appeal, Lingle challenges both bases for dismissal. Because we conclude the trial court did not err in dismissing Lingle's claims pursuant to the TCPA, we need not address the dismissal of Lingle's claims under Rule 91a. *See* TEX. R. APP. P. 47.1; TEX. R. CIV. P. 91a.9.

## THE TEXAS CITIZENS PARTICIPATION ACT

### *Applicable Law and Standard of Review*

The purpose of the TCPA "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002. Under the TCPA, a party may file a motion to dismiss a legal action if the "legal action is based on or is in response to [that] party's exercise of the right of free speech, right to petition, or right of association[.]" *Id.* § 27.003(a).

The filing of a TCPA motion initiates a three-step process with shifting burdens. First, the movant must demonstrate that the TCPA applies. *See id.* § 27.005(b). To meet this burden, the movant must demonstrate that the nonmovant's legal action is based on or is in response to the movant's exercise of a right to associate, speak freely, or petition. *Id.* If the movant meets its initial burden, the burden then shifts to the nonmovant bringing the legal action to establish by clear and specific evidence a prima facie case for each essential element of its claims. *Id.* § 27.005(c). If the nonmovant satisfies that requirement, the burden shifts back to the movant to establish, as a matter of law, any valid affirmative defense. *Id.* § 27.005(d). In making a TCPA determination, the trial court considers the pleadings, evidence a court could consider under Texas Rule of Civil Procedure 166a, and any supporting and opposing affidavits stating the facts on which the claim or defense is based. *Id.* § 27.006(a); TEX. R. CIV. P. 166a (stating evidence trial court may consider in summary judgment proceeding). We review de novo whether the parties have met their respective TCPA burdens. *See Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019).

We acknowledge that "a TCPA motion to dismiss is not a trial on the merits and is not intended to replace either a trial or the summary judgment proceeding established by the Texas Rules of Civil Procedure." *Stallion Oilfield Servs. Ltd. v. Gravity Oilfield Servs., LLC*, 592 S.W.3d 205, 215 (Tex. App.—Eastland 2019, pet. denied); *see also West v. Quintanilla*, 573 S.W.3d 237, 243 n.9 (Tex. 2019) ("A finding that [nonmovant] has met his TCPA burden does not establish that his allegations are true."). Accordingly, we do not resolve any issues unrelated to the purpose of the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.002.

*Analysis*

In its TCPA motion, Sage asserted that its communications—i.e., its filing of the abstract of judgment, request for the writ of execution, letter to Probate counsel, and intervention in the divorce proceeding—were made in or related to a judicial proceeding, and, as such, it was exercising its right to petition. Addressing TCPA steps two and three, Sage argues that Lingle failed to establish a prima facie case for each essential element of his claims, and even if he did, it was entitled to judgment as a matter of law because the judicial proceedings privilege protected its actions. In response, Lingle concludes that the TCPA does not apply to his claims against Sage, and even if it did, that he provided clear and specific evidence of his claims and Sage failed to establish the judicial proceedings privilege. Because steps one and two are dispositive of this appeal, we do not address step three—whether Sage established the judicial proceedings privilege.

*Step One: TCPA Applicability*

Under the first step, Sage had the initial burden to show that Lingle's "legal action" was based on or in response to Sage's "exercise of [its] right of free speech, right to petition, or right of association[.]" *Id.* § 27.003(a). Lingle contends the underlying lawsuit is not within the bounds of the TCPA because it stems from Sage's post-judgment actions in the Embezzlement lawsuit. The TCPA specifically excludes post-judgment actions from the statute. *See id.* § 27.001(6)(C) ("'Legal action' . . . does not include . . . post-judgment enforcement actions.").

Although Lingle is correct in that the TCPA does not apply to post-judgment enforcement actions, a post-judgment enforcement action is not the legal action at issue in this appeal. Rather, the legal action for our review is Lingle's lawsuit against Sage. Lingle's lawsuit clearly falls within the TCPA's definition of a "legal action." *See id.* § 27.001(6) (defining "legal action" as used in the statute as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any

other judicial pleading or filing that requests legal, declaratory, or equitable relief"); *Ferchichi v. Whataburger Restaurants LLC*, No. 23-0568, 2025 WL 1350005, at *3–6 (Tex. May 9, 2025) (discussing the meaning of "legal action" within the TCPA). Accordingly, we hold that the lawsuit underlying this appeal constitutes a "legal action" under the TCPA. Thus, the next inquiry in our applicability analysis is whether the legal action is based on or in response to Sage's right to petition.

As stated, the TCPA allows for a dismissal of a legal action that is "based on or is in response to a party's exercise" of their right to petition. TEX. CIV. PRAC. & REM. CODE § 27.003(a). The TCPA defines "exercise of the right to petition" as including "a communication in or pertaining to . . . a judicial proceeding." *Id.* § 27.001(4)(A)(i). "'Communication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). "'Based on or in response to' is not defined in the statutory scheme." *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 275 (Tex. App.—Tyler 2021, pet. denied). Without a statutory definition, Texas courts "have stated that the TCPA's required nexus is satisfied at minimum for legal actions that 'are factually predicated on' allegations of conduct that fall within one of the TCPA's protected rights." *Id.* at 276 (citations omitted).

"In determining whether the TCPA is applicable, we conduct 'a holistic review of the pleadings.'" *Id.* at 277 (quoting *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018)). "Our analysis is not constrained by the 'precise legal arguments or record references' made by the moving party regarding the TCPA's applicability." *Id*. "In the final analysis then, '[w]hen it is clear from the [nonmovant's] pleadings that the action is covered by the [TCPA], the [movant] need show no more.'" *Id*. (quoting *Adams*, 547 S.W.3d at 897) (alterations in original).

- 6 -

In the trial court and on appeal, Lingle argues his lawsuit does not implicate Sage's right to petition because Sage's filings in the Bexar County property records were "not done in the confines of [a] judicial proceeding." One of our sister courts has addressed this issue directly and held the filing of an abstract of judgment implicated the nonmovant's right to petition because an abstract acts "to encumber property and to provide notice of a complication related to a property's title to would-be purchasers;" therefore, an abstract "amount[s] to [a] communication[] in or pertaining to a judicial proceeding." *Connor v. McMahan*, No. 03-23-00224-CV, 2024 WL 5248528, at *4 (Tex. App.—Austin Dec. 31, 2024, pet. denied) (mem. op.). We agree with our sister court and hold Lingle's claims based on Sage's filing of the abstract of judgment and request for writ of execution in the Bexar County property records to be based on or related to Sage's communication made in or pertaining to a judicial proceeding. *See id.*; TEX. CIV. PRAC. & REM. CODE §§ 27.001(1), 27.003(a), 27.001(4)(A)(i). Likewise, the statements complained of by Lingle—i.e., that Sage held an enforceable judgment against him—made in the letter to Probate counsel and Sage's intervention into Lingle's and Sarah's divorce proceeding meet the definition of "communication in or pertaining to . . . a judicial proceeding." TEX. CIV. PRAC. & REM. CODE § 27.001(4)(A)(i). Accordingly, we hold that Lingle's lawsuit is based on or in response to Sage's right to petition within the meaning of the TCPA. *Id.* §§ 27.001(4)(A)(i), 27.003(a). As a result, Sage was entitled to file a motion to dismiss challenging the sufficiency of Lingle's claims.

*Step Two: Prima Facie Case[2]*

Because Sage demonstrated that the TCPA applies, the burden shifted to Lingle to establish by clear and specific evidence a prima facie case for each essential element of his claims. *See id.* § 27.005(c). "Neither the TCPA nor common law define 'clear and specific evidence.'" *Straehla v.*

---

[2] In his live petition, Lingle listed "Sage's harassment and abuse" under his list of claims. However, Lingle did not brief this issue on appeal; therefore, we will not address it.

*AL Glob. Servs., LLC*, 619 S.W.3d 795, 803 (Tex. App.—San Antonio 2020, pet. denied). "Clear" and "specific" "mean, for the former, 'unambiguous,' 'sure,' or 'free from doubt' and, for the latter, 'explicit' or 'relating to a particular named thing.'" *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding). Clear and specific evidence requires "enough detail to show the factual basis" of the claim, but it does not "impose an elevated evidentiary standard," "categorically reject circumstantial evidence," or "impose a higher burden of proof than that required of the plaintiff at trial." *Id.* at 591. A prima facie case "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.* at 590. "It is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (citation omitted).

1. *Texas's Fraudulent Lien Statute*

Lingle's fraudulent lien claim is based on section 12.002 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE § 12.002(a). In order "[t]o establish a prima facie case of [his] fraudulent lien claim, [Lingle] had to present evidence that [Sage] (1) presented the Request for Abstract of Judgment with knowledge that it was fraudulent, (2) intended the document to be given legal effect as a valid lien, and (3) intended to cause harm to [Lingle]." *Connor*, 2024 WL 5248528, at *4. In this case, assuming without deciding that Lingle satisfied elements two and three, we ultimately hold he failed to provide prima facie evidence establishing Sage's knowledge at the time it presented the abstract of judgment. *See Nationstar Mortg. LLC v. Barefoot*, 654 S.W.3d 440, 453 (Tex. App.—Houston [14th Dist.] 2021, pet. denied) (noting that Texas courts "when analyzing whether a lien is fraudulent [under section 12.002] consider whether it was created in bad faith or with dishonesty, a lack of integrity, or moral turpitude"); *Walker & Assocs. Surveying, Inc. v. Roberts*, 306 S.W.3d 839, 849 (Tex. App.—Texarkana 2010, no pet.)

(opining that although a "lien may be invalid and unenforceable as filed," this does not establish the lien is fraudulent).

In his response to Sage's TCPA motion, Lingle argued, "Sage's correspondence, communications, and ultimately, filing of the Illegal Abstract and then attempting to secure a final judgment, evidences its knowledge of falsity." Lingle contends that the representations to Probate counsel in the letter—that Sage had a default judgment against Lingle and that it was a creditor of Lingle—establish Sage's fraudulent knowledge. As supporting evidence, Lingle cites the letter to Probate counsel and to Texas Penal Code section 8.03. *See* TEX. PENAL CODE § 8.03 (establishing that mistake of law is not a defense to criminal prosecution).

Although Lingle's cited evidence arguably supports elements two and three, he does not explain how the evidence establishes a prima facie case of Sage's knowledge at the time it presented the abstract of judgment for recording in the Bexar County property records. *See Barefoot*, 654 S.W.3d at 453; *Roberts*, 306 S.W.3d at 849; *Smith v. 2005 Tower LLC*, No. 09-22-00350-CV, 2024 WL 3616470, at *6 (Tex. App.—Beaumont Aug. 1, 2024, pet. denied) (mem. op.); *cf. Connor*, 2024 WL 5248528, at *6–7 (noting nonmovant's evidence supported inference that movant "knew when she filed the Request [for Abstract of Judgment] that the interim order was not a legitimate document on which to base a purported lien."). Except for the citations to the letter to Probate counsel, the Penal Code, and section 12.002 of the Texas Civil Practice and Remedies Code—none of which support any inferences about Sage's knowledge of the abstract's enforceability—Lingle does not provide any other record or authoritative support for his arguments. *See* TEX. R. APP. P. 38.1(i); *Beebe v. City of San Antonio by & through CPS Energy*, 673 S.W.3d 691, 703 (Tex. App.—San Antonio 2023, pet. denied); *Jones v. Hous. Auth. of the City of Dallas, Tex. Park Manor*, No. 05-19-00841-CV, 2020 WL 3118615, at *1 (Tex. App.—

Dallas June 12, 2020, no pet.) (mem. op) ("We are not required to search the appellate record, with no guidance from the briefing party, to determine if the record supports the party's argument."). Accordingly, we hold that Lingle failed to establish a prima facie case for his fraudulent lien claim.

### 2. *Common Law Unreasonable Collection Efforts*

Unreasonable collection efforts "is an intentional tort derived from the common law." *Hidden Forest Homeowners Ass'n v. Hern*, No. 04-10-00551-CV, 2011 WL 6089881, at *4 (Tex. App.—San Antonio Dec. 7, 2011, no pet.) (mem. op.); *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.). "The Supreme Court of Texas has not directly addressed the elements to be proven in an action for unfair collection practices." *Hern*, 2011 WL 6089881, at *4. "While the elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case, a plaintiff must generally prove that a defendant's debt collection efforts amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Id.* (citing *EMC Mortg. Corp.*, 252 S.W.3d at 868–69) (internal quotation marks and alterations omitted). We have observed:

> Texas courts have found the following evidence sufficient to state a cause of action for unreasonable debt collection: sending a large man to the plaintiff's home, who "yelling and screaming, demanded the keys to the house, and told the [Plaintiff's] family to get out"; falsely accusing the plaintiff of committing a crime to collect a debt; sending a large man to the plaintiff's home, who stood over the plaintiff shouting, shaking his finger and calling him a liar; sending a representative to the plaintiff's home, confronting and embarrassing the plaintiff's fiancée in front of social guests; calling the plaintiff five times in one night, with the final call including a threat of personal violence. . . The Fifth Circuit has observed that the tort of unreasonable collection is intended to deter "outrageous collection techniques.

*Hern*, 2011 WL 6089881, at *5 (citations and internal quotation marks omitted).

Lingle asserts Sage's filing of the abstract of judgment, request for writ of execution, intervention into Lingle's divorce proceeding, and letter to Probate counsel asserting there was a

collectible judgment against Lingle when, as Lingle contends, the judgment was interlocutory, constituted "unreasonable methods to intentionally attempt to inflict mental anguish upon [him] by willfully and wantonly attempting to collect the debt not owed, and fraudulently published in the Real Property Records of Bexar County an abstract claiming over $400,000.00 was lawfully owed to it." As a matter of law, we do not find Sage's filing of the abstract of judgment, request for a writ of execution, intervention into Lingle's divorce proceeding, and letter to Probate counsel portraying Sage to be a judgment creditor of Lingle, without more, to constitute a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm to amount to a prima facie case of unreasonable collection efforts. *See id.* Accordingly, Lingle failed to establish a prima facie claim for common law unreasonable collection efforts.

### 3. *Defamation*

Defamation may occur through slander or libel. *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018). Slander is an orally expressed defamatory statement, and libel is a defamatory statement expressed in written or other graphic form. *Id.* at 623–24. The elements of defamation "include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *In re Lipsky*, 460 S.W.3d at 593; *see* TEX. CIV. PRAC. & REM. CODE § 73.001 ("Elements of Libel").

Lingle's defamation claim is grounded in libel. Lingle argues Sage's writing—the filing of the abstract of judgment and request for writ of execution in the Bexar County records, and letter to Probate counsel—were false, and that in making the written statements, "Sage acted with intentional malice – or at minimum, negligently – to cause harm to [him]. [Lingle] now brings suit against [Sage] for its defamation in an amount that exceeds the minimum jurisdictional limits of

this court." Assuming without deciding that Lingle presented prima facie evidence that Sage's statements were false and published to third parties with the requisite degree of fault, we hold Lingle failed to present clear and specific evidence of damages arising from his defamation claim.

"A plaintiff asserting a defamation claim must plead and prove damages, unless the defamatory statements are defamatory *per se*." *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (per curiam) (internal quotation marks omitted). "While a defamatory statement is one that tends to injure a person's reputation, such a statement is defamatory *per se* if it injures a person in her office, profession, or occupation." *Hancock v. Variyam*, 400 S.W.3d 59, 62 (Tex. 2013); *In re Lipsky*, 460 S.W.3d at 596 ("Accusing someone of a crime, of having a foul or loathsome disease, or of engaging in serious sexual misconduct are examples of defamation *per se*."). "[W]hether a statement qualifies as defamation *per se* is generally a question of law." *In re Lipsky*, 460 S.W.3d at 596.

Here, the statements Lingle complains of all arise from Sage's representations that it holds, in essence, an enforceable judgment against Lingle and, as such, that Sage is a judgment creditor of Lingle. Lingle has not argued these statements are defamatory *per se*, and we decline to find the statements made in the abstract of judgment, request for writ of execution, or letter to Probate counsel relating to the alleged enforceable judgment to be defamatory as a matter of law. Because the allegedly defamatory statements Lingle complains of were not defamatory *per se*, Lingle was required to present prima facie evidence of damages to survive dismissal. *Bedford*, 520 S.W.3d at 904–05. Lingle failed to present any evidence to satisfy his burden. *See In re Lipsky*, 460 S.W.3d at 591 ("In a defamation case that implicates the TCPA, pleadings *and* evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how

they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss.") (emphasis added).

Lingle claims in his petition that Sage's conduct has caused him "to be debanked — his bank cancelled his depository accounts with him and returned his money — and caused him to lose credit to three credit card companies cancelling his accounts because" of the abstract of judgment filed by Sage. However, Lingle did not present evidence, such as in the form of an affidavit or otherwise, to support his allegation that he had been debanked as a result of the statements, nor has he shown some specific demonstrable injury attributable to Sage's conduct. *USA Lending Grp., Inc. v. Winstead PC*, 669 S.W.3d 195, 203 (Tex. 2023); *Bedford*, 520 S.W.3d at 905–06 (dismissing defamation claim under the TCPA where nonmovant either "offered no evidence of monetary or other damages suffered as a result" or insufficient damage evidence of the statements at issue). Accordingly, the trial court did not err in dismissing Lingle's defamation claim.

In sum, we hold that Lingle failed to establish clear and specific evidence of a prima facie case for each essential element of his claims. Because Lingle failed to satisfy his TCPA step two burden, we hold that the trial court did not err in granting Sage's TCPA motion to dismiss.

**CONCLUSION**

We affirm the trial court's dismissal of Lingle's legal action pursuant to the TCPA.

Lori I. Valenzuela, Justice
